HERBERT P. LINNELL *vs.* LAURA S. LINNELL.

Hampden.    February 28, 1924. — May 20, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Marriage and Divorce. Evidence,* Competency, Private conversation between husband and wife.

On evidence at the hearing of a libel by a husband for a divorce on the ground that he had been treated cruelly and abusively by the libellee, it was *held,* that the question, whether the conduct of the libellant amounted to justification of an act of the libellee in firing a gun at the libellant or barred a divorce, was for the trial judge.

At the hearing of a libel for divorce, the judge admitted a conversation between the libellant and the libellee where there was evidence that their daughter was in the next room, that the door was open, that the distance from one room to the other was ten or twelve feet, "just across the hall," that the wife's voice was extremely angry and excited, and that afterwards the daughter came into the room where the husband and wife were and was crying. *Held,* that the evidence warranted a finding that the daughter heard the conversation, which made it admissible.

At the hearing of a libel for divorce, the trial judge admitted a conversation between the husband and wife which occurred in the waiting room of the Union Station in Springfield, there being evidence that when it took place from thirty to forty persons were there " going and coming . . . there was a crowd coming and going all the time," and that any one who had been listening could have heard it within four or five feet from where they were standing. *Held,* that an exception to the admission of the evidence must be overruled.

At the hearing of a libel by a husband for divorce on the ground of cruel and abusive treatment, testimony that the libellee in the presence of the libellant called the treasurer of the corporation in which the libellant was interested " various names " when the treasurer attempted to dissuade her from preventing him and the libellant from keeping a business appointment, was admissible. Testimony of the libellant tending to show that the treasurer stated to him "that he would not stand that from anybody," was inadmissible, but its admission was *held* not to have harmed the libellee.

Where, at the hearing of a libel by a husband for divorce, there was evidence tending to show that the libellee shot a gun and wounded the

libellant in the leg, and also further evidence that the libellant then looked up and saw the libellee standing about fourteen feet from him with the gun "leveled at . . . [him] at the height of her hip;" that she called him indecent names and threatened to kill him; that he told her he was leaving the house and she replied, "You had better. If you ever come in again, I will kill you," it was proper for the judge to refuse to rule that there was no evidence that the libellee discharged the gun with the intention of inflicting bodily harm on the libellant and that if the libellee did not intend to have the bullet hit him, and did not intend to injure him, her act did not constitute cruel and abusive treatment.

LIBEL, filed in the Superior Court on August 20, 1921, seeking a divorce on the ground of cruel and abusive treatment.

In the Superior Court, the libel was heard by *King*, J. The evidence referred to in the opinion as to accusations made before one Dodson was, in substance, as follows: The libellant and Dodson, the treasurer of his corporation, were starting from an apartment hotel in Springfield, where the libellant and the libellee had an apartment, to go by automobile to Melrose, when the libellee came out, got into the automobile, and said they could not go, that the car would not leave unless she went with it; that, upon the libellant explaining that it was necessary that he and the treasurer go to Melrose to keep a business appointment, the libellee said he was lying, that they were going to meet some women; and that she became very indignant. Dodson tried to argue with her in the presence of the libellant, but "she became violent, calling him various names;" that he could not remember the names, but that Dodson said to the libellant, "that he would not stand that from anybody."

Other material evidence and exceptions to rulings upon the evidence are described in the opinion. The first and eighth requests of the libellee for rulings, referred to in the opinion, were as follows:

"1. There is no evidence that Laura S. Linnell discharged the gun with the intention of inflicting bodily injury on Herbert P. Linnell."

"8. If the pistol was not aimed at Mr. Linnell, and if Mrs. Linnell did not intend to have the bullet hit him, and

did not intend to injure him, then her act did not constitute cruel and abusive treatment."

A decree *nisi* was ordered by the judge, and the libellee alleged exceptions.

The case was submitted on briefs.

*R. P. Stapleton & J. O'Shea,* for the libellee.

*J. B. Ely & W. C. Giles,* for the libellant.

CROSBY, J.   The grounds alleged in the libel are cruel and abusive treatment on or about July 19, 1921, and on divers other times and occasions.   Specifications were filed giving the time, place and acts relied on to sustain the allegations. The trial judge found for the libellant, and a decree *nisi* was entered.   The libellee appealed, and also excepted to the admission of certain evidence, and to the refusal of the court to give certain requests for rulings.

The libellant testified that on one occasion the libellee attempted to strike him with a mirror in the presence of his son; that she kicked him, called him vile names, accused him of murdering his first wife and of attempting to kill her; that in July, 1920, she accused him of various misdeeds and threatened to do him injury; that on another occasion she kicked him and he was obliged to restrain her by force; that about April 1, 1921, he offered her some money which she refused and struck him, and he took hold of her arms, and she kicked him and struck him in the face with her fist; that he started to go out of the room and she threw a heavy vase, striking him in the back of his head; that she administered cruel and excessive punishment to his daughter (who was ten years old and the child of a former marriage); that she threatened the child with violence if she talked to her father and punished her so severely as to cause black and blue marks on her legs and neck.   He further testified that on July 19, 1921, he went home to get the keys to a trunk; that as he stepped out of his room into the hallway he heard a shot and felt the sting of a bullet through his leg; that he looked up and his wife was standing about fourteen feet from him with a gun " leveled at . . . [him] at the height of her hip; " that she called him indecent names and threatened to kill him; that he told her he was leaving the

house and she replied, " You had better.   If you ever come in again I will kill you."

The libellee denied that she had ever ill treated or abused her husband, but admitted that she fired the pistol.   She testified that she did not intend to shoot him.   Whether the conduct of the libellant amounted to a justification for the acts of the libellee or barred a divorce was for the trial judge.   *Lyster* v. *Lyster*, 111 Mass. 327.   *Freeman* v. *Freeman*, 238 Mass. 150, 160.

The libellee excepted to the admission of a conversation between her husband and herself.   He testified that his daughter was in the next room, and that the door was open, the distance from one room to the other being ten or twelve feet, " just across the hall; " that his wife's voice was extremely angry and excited;  that afterwards the daughter came into the room where they were, and she was crying. This evidence, if believed, warranted a finding that the daughter heard the conversation, which made it admissible. *Lyon* v. *Prouty*, 154 Mass. 488, 490.

The trial judge admitted, subject to the exception of the libellee, a conversation between the parties which occurred in the waiting room of the Union Station in Springfield. This conversation was objected to on the ground that it was a private conversation between husband and wife.   There was evidence that when it took place from thirty to forty persons were there " going and coming . . . there was a crowd coming and going all the time," and that any one who had been listening could have heard it within four or five feet from where they were standing.   The admission of this evidence shows no ground of exception.   In these circumstances it could not have been ruled as matter of law that what was said by the parties in a room where thirty or forty other persons were present was a private conversation within G. L. c. 233, § 20.   The evidence in the case at bar is plainly distinguishable from that held inadmissible in *Freeman* v. *Freeman, supra.*

The court admitted, subject to the exception of the libellee, testimony of the libellant that he and one Dodson (who was treasurer of the company of which the libellant was

president) were about to leave on a business trip and that he so stated to the libellee; that she accused him of lying, said that they were going to meet some women, and called Dodson " various names." The testimony to the effect that she called Dodson names in the presence of the libellant was competent, but what Dodson afterwards said respecting this incident was inadmissible; yet its admission could not have been prejudicial to the libellee.

The record states that the libellee's original requests for rulings have been lost, but it is agreed that the first and eighth were refused; the others are not before us. The first could not have been given: it was a question for the trial judge whether or not the shooting was intentional. The eighth was also rightly refused: if she did not intend to shoot him when she discharged the pistol, still her act might well have been found to constitute cruel and abusive treatment. If the trial judge believed the testimony of the libellant, there was ample evidence to justify a finding that the allegations of the libel had been sustained; and as no error appears in the admission of evidence or in the refusal to give the first and eighth requests, the decree must be affirmed, and the exceptions are to be overruled.

*So ordered.*