**Marvin HOLMAN, Appellant,**

v.

**CENTRAL ARKANSAS BROADCAST-ING CO., INC., Sgt. Ronald W. Stobaugh, Patrolman Jackie Race and Carl Connerton, Appellees.**

**No. 79–1333.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 6, 1979.

Decided Dec. 12, 1979.

Gregory G. Smith, Pryor, Robinson, Taylor & Barry, Fort Smith, Ark., for appellant.

Cyril Hollingsworth, Davidson, Plastiras, Horne, Hollingsworth & Arnold, Little Rock, Ark., for appellee, Central Arkansas Broadcasting Co.

Edward A. Gordon, Gordon & Gordon, Morrilton, Ark., for appellee, Stobaugh.

Before LAY, BRIGHT and McMILLIAN, Circuit Judges.

LAY, Circuit Judge.

Summary judgment was granted defendants Central Arkansas Broadcasting Company, Inc., Carl Connerton, a news reporter, and police officers Ronald W. Stobaugh and Jackie Race, in a suit brought by Marvin Holman under 42 U.S.C. § 1983 for alleged invasion of Holman's right of privacy and other civil rights. Holman also alleged a claim under 18 U.S.C. § 2520.[1] We affirm.

On November 20, 1975, Holman and his wife were stopped on the highway at approximately 3:56 A.M., and taken to the Russellville, Arkansas police station. Holman was charged with the offense of driving while intoxicated, second offense, and using profane and abusive language; Mrs. Holman was charged with public drunkenness. Holman, an attorney, had formerly served as municipal judge. The original complaint alleged the police officers, acting under color of state law, entered into a conspiracy with Connerton to publish an embarrassing news account of Holman's arrest and subsequent behavior.

Holman was allowed to privately confer with his retained counsel, Robert Hays Williams, at 4:30 A.M. in a private lounge.

Williams later represented Holman at his trial in municipal court. Holman's young associate, an attorney named Roderick Weaver, came to the jail shortly after 5:30 A.M. to secure the release of Holman and his wife on bond. The police informed him they would not release the Holmans until 9:00 A.M. Upon his return he observed at least two persons who were not police officers, one of whom he later learned was Mr. Connerton, a news reporter. When he went to Holman's cell he noticed Connerton was in the cell block a short distance behind him and had a tape recorder in his hand. Weaver told Connerton not to record any conversation between himself and Holman. According to Weaver, Connerton appeared to walk away. At this time, Holman's wife was taken from her cell for fingerprinting and photographing. According to the affidavits of three police officers, Holman was hitting and banging on his cell door, hollering and cursing from the time of his arrest until his release at approximately 9:00 A.M.[2] The police communications operator stated Holman became abusive and refused to cooperate when she tried to give him a gas chromatograph test. When placed in the holding cell, he started hollering, cussing and screaming. Her affidavit states:

He [Holman] began calling the officers present and myself vulgar names. This was going on throughout the morning and was still going on when I left at 8:00 a. m. At approximately 6:00 a. m. on that morning, November 19, 1975, KARV Radio Station called and wanted to know what was going on, that they were hearing a lot of noise. I told them it was just

---

1. Section 2520 of Title 18 provides civil liability for unlawful interception of an oral communication. *See* 18 U.S.C. §§ 2510–20.

2. The factual allegations of the complaint foreshadowed the shortcomings in Holman's case:
   Mr. Connerton was let into the cell block where is located the cell in which the plaintiff [Holman] was incarcerated, and an area where nonauthorized personnel are excluded (and Mr. Connerton was not an authorized person) for the purpose of recording on tape recording equipment a conversation being carried on between the plaintiff and his attorney, Mr. Rick Weaver. *At that time and place the plaintiff was quite exercised be-*

*cause of the treatment which he had received from the police department of the City of Russellville and because of the treatment which his wife at that time was receiving and was in the process of protesting loudly and profanely to his attorney about such treatment.* Mr. Connerton recorded that conversation, a conversation in which the plaintiff was obviously emotionally disturbed, and then proceeded to broadcast that recording over radio station KCAB for the purpose of causing embarrassment and humiliation to the plaintiff, and which broadcast achieved its purpose (emphasis added).

a drunk and I did not give them any names. KARV Radio Station is located about a block east of the police station. Prior to the time I left at 8:00 a. m. no member of any news media had arrived at the police station and to my knowledge no telephone call was made from the po-- lice station to any member of the news media.

James L. Guhl, an officer in the detective division, arrived between 8:00 and 8:30 A.M. He stated:

> When I arrived I went to my office which is close to the holding cells I could hear quite a commotion going on back around the cells. Someone was hollaring [sic], banging and cursing. When I got to the office Detective Holt was there, and I asked him what was going on. He told me that Marvin Holman had been arrested the night previous for DWI and that this had been going on quite awhile; that is, since he had been arrested he had been banging on the door, etc.

> During the time that I was in the police department, I heard the constant banging Mr. Holman was making either with his hands or shoes against the cell door. He was cursing and saying that if they would let him out of the holding cell he would whip several of the officers. When they took his wife out of the holding cell to be processed he shouted that the officers had better not put their hands on his wife, that she did not have to submit to that.

■ No credible evidence appears in the record that Connerton recorded any confidential information. It is obvious from the affidavits that the words broadcast could be heard by others in the police station. Holman argues the Fourth and Sixth Amendments create a "zone" of privacy which was violated by Connerton's recording and publishing of Holman's statements. The simple answer to this contention is that the boisterous complaints which were recorded were not made with the expectation of privacy or confidentiality. Neither Weaver nor Holman asserts confidential legal advice was given. The evidence demonstrates unequivocally that Holman was simply complaining loudly while Weaver tried to quiet him down in order to arrange his release.

■ Even assuming the police called the news reporter to the station and allowed him to enter the cell block, no right to privacy is invaded when state officials allow or facilitate publication of an official act such as an arrest. *See Paul v. Davis,* 424 U.S. 693, 712–13, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 491–93, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). Although Weaver asked Connerton not to record Holman's statements, they were made loudly and in such a manner as to attract attention. Connerton could not be prevented from reporting the statements he could so easily overhear aurally; use of a device to record them cannot create a claim for invasion of privacy when one would not otherwise exist.

We recognize the important and vital right to private consultation that is basic to effective representation by counsel flows from the confidential relationship between an accused and his counsel. However, the undisputed facts distinguish this case from those in which that right is protected. *Cf. Coplon v. United States,* 89 U.S.App.D.C. 103, 191 F.2d 749 (D.C.Cir. 1951), *cert. denied,* 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952) (interception of telephone conversations between accused and counsel before and during trial). Here there was no attempt to record or overhear statements made with an expectation of privacy. Holman's boisterous complaints were obviously not intended for Weaver's ears alone. The tape demonstrates this.

■ Holman amended his complaint to allege a second count under 18 U.S.C. §§ 2510, 2520 for unlawful interception of an oral communication. The same reasoning that defeats his section 1983 claim applies to this one. The facts clearly show Holman's remarks were not uttered with an

expectation that his communication would be private, that is, not subject to interception; nor were they uttered under circumstances justifying such an expectation. 18 U.S.C. § 2510(2); *United States v. Carroll,* 337 F.Supp. 1260, 1262 (D.D.C.1971). Under the circumstances, Holman's claim for unlawful interception must fall as well.[3]

As Judge Van Sickle, presiding over the district court, wrote in granting summary judgment:

> The Plaintiff knew he was being interviewed. He knew the newsman had recording equipment. He yelled and swore at the top of his voice. He slammed the bars and produced loud and attention getting noises. He made no effort to communicate confidentially to his attorney. In fact, his attorney was busy trying to silence him long enough to get him out of the public place.

Judgment affirmed.

---

**3.** The legislative history of 18 U.S.C. § 2510 discusses the definition of "oral communication" as an utterance made under circumstances justifying an expectation that it is not subject to interception:

> The person's subjective intent or the place where the communication is uttered is not necessarily the controlling factor. Compare *Linnell v. Linnell* [249 Mass. 51], 143 N.E. 813 (Mass.1924), with *Freeman v. Freeman* [238 Mass. 150], 130 N.E. 220 (Mass.1921). Nevertheless, such an expectation would clearly be unjustified in certain areas; for example, a *jail cell* (*Lanza v. New York,* 370 U.S. 139, 82 S.Ct. 1218 [8 L.Ed.2d 384] (1962)) or an open field (*Hester v. United States,* 265 U.S. 57, 44 S.Ct. 445 [68 L.Ed. 898] (1924)). Ordinarily however, a person would be justified in relying on such expecta-

tion when he was in his home (*Silverman v. United States,* 365 U.S. 505, 81 S.Ct. 679 [5 L.Ed.2d 734] (1961)) or office (*Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873 [18 L.Ed.2d 1040] (1967)), but even there, his expectation under certain circumstances could be unwarranted, for example, when he speaks too loudly. See *State v. Cartwright,* [246 Or. 120], 418 P.2d 822 (Ore.1966), *certiorari denied* 386 U.S. 937, 87 S.Ct. 961 [17 L.Ed.2d 810] (1967).

S.Rep. No. 1097, 90th Cong., 2nd Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, p. 2178 (emphasis added). Section 802 of the Omnibus Crime Control and Safe Streets Act of 1968 was revived by section 20(c) of the Omnibus Crime Control Act of 1970. See Act Jan. 2, 1975, P.L. 93–609, § 4, 88 Stat. 1973.