

(No. 83-63331 — Decided
October 15, 1986.)

Court of Common Pleas of
Cuyahoga County.

*Kraig & Pasz* and *Jerry Kraig,* for
plaintiff.

*Baker & Hostetler* and *David L.
Marburger,* for defendant Plain Dealer
Publishing Co.

*Terence J. Clark* and *Joseph A.
Castrodale,* for defendant WKYC-TV3.

James J. McMonagle, J. This
case is before this court on defendant
WKYC-TV3's and defendant the Plain
Dealer Publishing Company's motions
for summary judgment. The other de-
fendants, namely Captain Earl Zimlich,
Detective George Dobrovic, Cuyahoga
County Sheriff's Department, WJKW-
TV8, WEWS-Channel 5, having settled
the claims against them, are no longer
parties to this litigation.

The facts giving rise to these mo-
tions for summary judgment, as con-

tained in the materials supplied in accordance with Civ. R. 56, provide the following:

On August 24, 1982, the plaintiff, Larry Haynik, was arrested by Captain Earl Zimlich of the Cuyahoga County Sheriff's Narcotic Unit pursuant to a secret indictment charging plaintiff with a violation of R.C. 2925.23, a drug abuse felony of the fourth degree. Haynik was transported to the Justice Center where he admitted to printing the prescription blanks that were the subject of the indictment, but denied any participation in or knowledge of the alleged criminal activity associated with the prescription blanks. Approximately forty minutes later, at 11:55 a.m., he was visited by his attorney who informed him that his bond had been posted and his release was imminent. Around 3:00 p.m., the plaintiff, handcuffed and accompanied by two deputies, was paraded in front of the invited media, who were permitted to film and photograph the event. About two hours later, the plaintiff was released from jail.

The affidavits of the parties also indicate that previous to the plaintiff's being paraded in front of the media, Captain Zimlich had telephoned the news departments of the local media and informed them that he had just arrested a man for printing counterfeit prescriptions, that he had copies of some of the counterfeit prescriptions, and that he would be meeting with the media to discuss the arrest.

A reporter from WKYC and The Plain Dealer went to the Sheriff's Narcotic Unit offices at the Justice Center accompanied by a cameraman and a photographer, respectively. They joined other reporters who were waiting outside the Narcotic Unit offices in an unsecured public hallway. While the reporters waited, Narcotic Unit officials were apparently questioning Haynik in the Narcotic Unit interrogation room. When the questioning was finished, Captain Zimlich and another officer took Haynik to a secured elevator leading to the booking window of the jail. In so doing, the two sheriff's officers and the plaintiff passed reporters who were standing in an unsecured public hallway, which is the only route between the Narcotic Unit offices and the elevator. At that time, the defendants filmed and/or photographed the three men as they passed.

Shortly afterward, Captain Zimlich and Sergeant Clifton briefed the press about Haynik's arrest and answered questions concerning the arrest. A press release summarizing those facts was made available to reporters, and samples of the counterfeit prescription forms were displayed. The following day (August 25, 1982), The Plain Dealer published an article[1] and a photograph about the arrest. The WKYC reporter

---

[1] "POLICE SAY PRINTER SOLD "FAKE PRESCRIPTION PADS

"The owner of a West Side print shop was arrested yesterday in the sale of counterfeit prescription forms used to buy drugs at local pharmacies, officials said.

"Larry Haynik, 29, of 3351 W. 97th St., was charged with illegal processing of drug documents. He was arrested by deputy sheriffs at his store, Best For Less Printing Co., 3416 W. 105th St., and later released on $1,500 bond.

"Deputy sheriffs said undercover sheriff's detectives bought 1,220 false prescription forms from Haynik during a three-month investigation which began after several people were arrested for using the fake forms.

"The illegal forms used the name of a legitimate doctor but listed a telephone number that would ring to an accomplice who would verify prescriptions when pharmacists would call, said Capt. Earl Zimlich of the sheriff's narcotic bureau.

" 'It's the first time I've bumped into this scam,' Zimlich said. He said, other printers in the city were suspected of selling fake forms.

"Most of the forms were used to buy

wrote the script[2] for a news story that appeared on the 6:00 p.m. news of WKYC the day of the arrest.

The affidavits demonstrate that the WKYC broadcast and The Plain Dealer article were based exclusively on information provided by the Narcotic Unit spokesmen, both in the press release and during the briefing, and that both reports expressly attributed the information to the Narcotic Unit officials.

In January 1983, the plaintiff was found not guilty of the criminal charges that had been brought against him; he then instituted this proceeding for damages based on the theories of defamation and invasion of privacy. The remaining defendants, WKYC-TV3 and the Plain Dealer Publishing Company, state that the broadcast and the article are privileged under both the common-law "fair report" privilege and the statutory privilege found in R.C. 2317.05, and that there are no facts to support the invasion of privacy claim. This opinion is a supplementation of the previous court order granting defendants' motions.

The procedural posture of this case has made the defendants' motions for summary judgment ripe for decision.

Civ. R. 56(C) prescribes the test to be applied by the trial court in deciding a motion for summary judgment:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.* * *"

The burden of showing that there is "no genuine issue as to any material fact" falls upon the moving party in a summary judgment proceeding. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46; *State* v. *Licsak* (1974), 41 Ohio App. 2d 165, 70 O.O. 2d 325, 324 N.E. 2d 589.

The Supreme Court has given further guidelines to a trial court to consider before deciding a summary judgment motion:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact;

---

Demerol, a narcotic often used by heroin addicts, deputy sheriffs said.

"The prescription forms detectives said they bought from the man would have allowed drug users to buy more than 36,000 pills worth about $330,000, they said."

[2] "WKYC-TV3
"August 24, 1982
"6:00 p.m. News Report
"A west side man charged with forging and distributing more than 12 hundred counterfeit prescription forms is out of business tonight, following a three month investigation.

"According to the Sheriff's Department Narcotics Unit, Larry Haynik printed the pads for area junkies.

"Investigators say the prescription forms were identical to the real thing. The phone number though was always that of an accomplice . . . in the event the druggist called the doctor for a confirmation. The prescriptions were used to purchase Demerol, and according to police, similar arrests are expected in the future."

(2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless* v. *Willis Day Warehousing Co., supra,* at 66, 8 O.O. 3d at 74, 375 N.E. 2d at 47.

" 'Summary judgment is a procedural device to terminate litigation and to avoid a formal trial when there is nothing to try. *It must be awarded with caution,* resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.' " (Emphasis added.) *Norris* v. *Ohio Standard Oil Co.* (1982), 70 Ohio St. 2d 1, 2, 24 O.O. 3d 1, 2, 433 N.E. 2d 615, 616.

Summary judgment then is " 'a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.' " *Dupler* v. *Mansfield Journal* (1980), 64 Ohio St. 2d 116, 120, 18 O.O. 3d 354, 356-357, 413 N.E. 2d 1187, 1191, certiorari denied (1981), 452 U.S. 962. This decision is grounded upon these principles.

A review of the applicable law is helpful in deciding these matters.

Ohio recognizes a common-law privilege to report upon government affairs and official government actions. This privilege is generally referred to as the "record" or "fair report" or "official action" privilege. Among other types of government reports protected by the fair report privilege, the privilege protects news reports of judicial proceedings, including reports of an arrest and indictment. The privilege applies so long as the news report deals with a matter of public concern and is a fair and substantially accurate account of the judicial proceedings or of information provided by the government. *Grafton* v. *American Broadcasting Co.* (1980), 70 Ohio App. 2d 205, 24 O.O. 3d 259, 435 N.E. 2d 1131; see, also, *Shifflet* v. *Thomson Newspapers, Inc.* (1982), 69 Ohio St. 2d 179, 23 O.O. 3d 205, 431 N.E. 2d 1014; *Torski* v. *Mansfield Journal Co.* (1956), 100 Ohio App. '538, 60 O.O. 413, 137 N.E. 2d 679.

The basis for creating the fair report privilege was explained in the case of *Medico* v. *Time, Inc.* (C.A. 3, 1981), 643 F. 2d 134, certiorari denied (1981), 454 U.S. 836. Medico brought a defamation action against Time, Inc. arising out of an article which identified plaintiff as a member of a Mafia family. The Time magazine article was a summary of confidential FBI reports. In affirming the trial court's grant of summary judgment in favor of Time, the Third Circuit Court of Appeals held that the article fell within the common-law privilege of fair report. In so doing, the court commented upon this privilege as follows:

"To ameliorate the chilling effect on the reporting of newsworthy events occasioned by the combined effect of the republication rule and the truth defense, the law has long recognized a privilege for the press to publish accounts of official proceedings or reports even when these contain the defamatory statements. So long as the account presents a fair and accurate summary of the proceedings, the law abandons the assumption that the reporter adopts the defamatory remarks as his own. The privilege thus permits a newspaper or other press defendant to relieve itself of liability without establishing the truth of the substance of the statement reported." *Id.* at 137-138.

The common-law privilege in Ohio to report upon official government actions, proceedings, and statements was recently applied by the Court of Appeals for Lorain County in *Grafton* v.

*American Broadcasting Co., supra.* In that case, ABC broadcast the erroneous statement that, according to government sources, plaintiff Grafton, Ohio was the location of a deadly chemical waste dump. The broadcast was based upon information contained in an erroneous report issued by the Environmental Protection Agency. In affirming the trial court's dismissal of plaintiff's defamation claim against ABC, the court of appeals recognized "the privilege to report governmental proceedings which may contain defamatory matter * * *." *Id.* at 213, 24 O.O. 3d at 263, 435 N.E. 2d at 1136. The court further stated: "Heretofore, record privilege has been invoked mainly in the context of judicial proceedings; that is, litigation and commentary have focused on the right to make a truthful report of such things as the charges against a defendant or defamatory statements made during court testimony." *Id.* at 213, 24 O.O. 3d at 264, 435 N.E. 2d at 1137.

The "record" privilege, recognized in *Grafton, supra,* is consistent with other case law which provides that fair and substantially accurate reports of an arrest or of information disseminated by law enforcement officials concerning the circumstances surrounding this arrest are privileged against claims of defamation. See, *e.g., Williams* v. *WCAU-TV* (E.D. Pa. 1983), 555 F. Supp. 198; *Bell* v. *Associated Press* (C.A. D.C. 1984), 584 F. Supp. 128; *Ricci* v. *Venture Magazine, Inc.* (D. Mass. 1983), 574 F. Supp. 1563.

Applying these legal standards to the facts of the present case, reasonable minds could only conclude that the news reports by the defendants relating to the arrest of plaintiff are fully protected by the record privilege. WKYC's broadcast and The Plain Dealer's article were based solely upon information supplied by an official source, the Cuyahoga County Sheriff's Department, a defendant who is no longer a party to this case. Furthermore, the Civ. R. 56 material before this court confirms that the reports constituted a fair and substantially accurate account of the information which the reporters obtained at the official briefing conducted by the Sheriff's Department.

The WKYC broadcast and The Plain Dealer article merely reported officially provided information, and the reports were fair and accurate summaries of such information. The indictment charged that Haynick "did intentionally make, utter or sell false or forged uncompleted pre-printed prescription blanks." Further, the press release distributed by Captain Zimlich stated that, "Undercover agents of the Sheriff's Narcotic Unit purchased 1,200 of these counterfeit prescriptions from the defendant at a printing company which he owns * * *." According to affidavits and deposition testimony introduced by defendants, Captain Zimlich had also informed the media that, as a result of Haynik's arrest, Haynik was now out of the business of printing the counterfeit prescription pads. Zimlich further told the media that the arrest followed a three-month investigation by the Sheriff's Department Narcotic Unit, and that the pads Haynik was printing and selling were used by area junkies. Finally, the Sheriff's Department had informed the media during the briefing that the counterfeit prescription forms were identical to real prescription forms; that the telephone numbers on the forms belonged to an accomplice in the scheme who falsely verified the prescriptions in the event a pharmacy called; that individuals passing these prescriptions were for the most part obtaining Demerol; and that similar arrests were expected in the future.

Plaintiff cannot defeat summary judgment by raising purported minor discrepancies between the news reports and the official information. A news report is considered a substantially ac-

curate account of official government information or of a government report if the "gist" or the "sting" of the allegedly defamatory aspects of the news report taken as a whole accurately reflects the substance of the judicial proceedings or other information obtained from official sources. Errors as to secondary facts, that is, facts which do not change the import of the story or substantially alter the substance of the allegedly defamatory (but protected) aspect of the story, are not actionable. *Painter* v. *E.W. Scripps Co.* (1957), 104 Ohio App. 237, 4 O.O. 2d 388, 148 N.E. 2d 503; *Torski* v. *Mansfield Journal Co., supra.* See, also, *Ricci* v. *Venture Magazine, supra*; *Williams* v. *WCAU-TV, supra.*

Since defendants have established a privileged occasion for their news reports in order to avoid summary judgment in defendants' favor, plaintiff bears the burden of showing that defendants abused the privilege. The "record" privilege is abused only if it is shown that defendants published their reports solely for the purpose of causing harm to the plaintiff. *Medico* v. *Time, Inc., supra.* However, there is no evidence of such abuse before this court, and plaintiff cannot, therefore, satisfy his burden to avoid summary judgment on the defamation claim. See *Dupler* v. *Mansfield Journal, supra; Williams* v. *WCAU-TV, supra.*

Second, plaintiff asserts alternative causes of action under three of the four branches of the tort of the invasion of privacy, as the tort is set forth in Section 652A of the Restatement of the Law 2d, Torts (1977) 376. First, he alleges an invasion of privacy by means of publicity that unreasonably places him in a false light before the public. Second, he alleges unreasonable intrusion into his private affairs and concerns. Finally, plaintiff alleges a cause of action for unreasonable public disclosure of private facts. The record before this court clearly demonstrates that summary judgment should be granted in defendants' favor with respect to all three claims for invasion of privacy.

As a matter of law, Ohio does not recognize a cause of action for "false light" invasion of privacy. In *Housh* v. *Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E. 2d 340, the Ohio Supreme Court for the first time recognized the tort of invasion of privacy. But in so doing, the court recognized only three branches of the tort — wrongful appropriation of one's name or likeness, publication of embarrassing private facts, and intrusion upon seclusion. The Ohio Supreme Court did not recognize a cause of action for false light invasion of privacy. In the recent decision of *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 6 OBR 421, 453 N.E. 2d 666, the Ohio Supreme Court specifically confirmed the fact that Ohio has not yet adopted a cause of action for invasion of privacy under the false light theory of recovery. Under Ohio case law, plaintiff is thus precluded from seeking recovery under a false light theory; and that claim must be dismissed as a matter of law.

Nor can plaintiff state a claim for unlawful intrusion upon his seclusion. As the tort is defined in Section 652B of the Restatement of Torts 2d, *supra,* at 378, and in *Sustin* v. *Fee* (1982), 69 Ohio St. 2d 143, 23 O.O. 3d 182, 431 N.E. 2d 992, there must be intrusion (physically or otherwise) into something secret, secluded or private pertaining to the plaintiff. Comment *c* to Section 652B of the Restatement at 379 provides that: "The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs."

It is readily apparent that the subject matter of the news reports by defendants concerning plaintiff's arrest and indictment cannot, as a matter of law, form the basis for a claim of intrusion

upon seclusion. The matters broadcast or published by defendants have absolutely nothing to do with plaintiff's secret, secluded, or private concerns. Rather, the reports as they developed in this case can only be viewed as matters falling within the realm of legitimate public interest, and not within the domain of any private seclusion which plaintiff has thrown about his person or affairs. Indeed, information about this plaintiff's indictment and the other matters publicly reported by the defendants were matters already within the public realm at the time of defendants' reports.

Nor can plaintiff establish a claim for intrusion upon seclusion as a result of defendants' filming him after his arrest. Liability for intrusion does not exist where the defendant merely observes, films, or records a person in a public place, such as a courthouse or a police station. See Restatement, *supra,* at Comment *c* to Section 652B; *Fogel* v. *Forbes, Inc.* (E.D. Pa. 1980), 500 F. Supp. 1081; *Holman* v. *Central Arkansas Broadcasting Co.* (C.A. 8, 1979), 610 F. 2d 542. See, also, *Penwell* v. *Taft Broadcasting Co.* (1984), 13 Ohio App. 3d 382, 13 OBR 466, 469 N.E. 2d 1025. In this case, the media filmed and photographed plaintiff in a public hallway in the Sheriff's Department, not in a secluded or private area.

The staging of the event by the sheriff's office is not before this court; hence, the foregoing legal analysis demonstrates that, as a matter of law, defendants did not unreasonably intrude upon any supposed seclusion of plaintiff.

Finally, it is clear that plaintiff cannot recover under the closely related tort of unreasonable publication of private facts since the news reports of plaintiff's arrest and indictment did not in any manner publicize purely private matters. Comment *b* to Section 652D of the Restatement of Torts 2d, *supra,* at 385 emphasizes that in order to be liable under this branch of the tort of invasion

of privacy, the defendant must give publicity to "matters concerning the private, as distinguished from the public, life of the individual." Plaintiff has not alleged and cannot allege any facts which would lead to a conclusion that he was engaged in a purely private activity which defendants publicized in their reports. The matters concerning plaintiff which defendants reported did not concern his private life. Defendants reported matters contained in public records, reported publicly at the press conference, and/or already opened to public scrutiny. Under these circumstances, no cause of action for invasion of privacy exists. *Penwell* v. *Taft Broadcasting Co., supra.*

Moreover, by definition, liability does not exist where the publicized matters are of legitimate concern to the public. See Section 652D of the Restatement of Torts 2d, *supra.* A news report of a drug arrest under the facts before this court clearly constitutes a matter of legitimate public concern which precludes liability under this cause of action. See, *e.g., Logan* v. *Dist. of Columbia* (C.A. D.C. 1978), 447 F. Supp. 1328.

For the reasons set forth above, defendants WKYC-TV3 and the Plain Dealer Publishing Company are entitled to summary judgment on all claims.

*Judgment for defendants.*