MASTANDREA et al., Appellants,

v.

LORAIN JOURNAL COMPANY et al., Appellees.

[Cite as *Mastandrea v. Lorain Journal Co.* (1989), 65 Ohio App.3d 221.]

Court of Appeals of Ohio,
Lake County.

No. 13–078.

Decided Nov. 7, 1989.

222

*Brent L. English,* for appellants.

*Wickens, Herzer, & Panza Co., L.P.A.,* and *Richard D. Panza,* for appellees Lorain Journal and News Herald.

*B. Lawrence Allen,* for appellees Richard Wagner, Richard Piepsny, Sandy Riggin, Eric R. Knudson, William Ryan, Larry Tegner, and George L. Gamber.

*Joseph T. Svete Co., L.P.A.,* and *Paul O. Wickline,* for appellees George Tegner, Jr. and George Tegner III.

---

CHRISTLEY, Presiding Judge.

In November 1983, Roland Mastandrea was one of three candidates for Mayor of Willoughby. During the campaign, a political flier titled "Wake Up Willoughby" was distributed by Mastandrea supporters. This handbill sparked controversy in what was already a hotly contested campaign and became the subject of newspaper articles which Mastandrea claimed were defamatory. Mastandrea claimed he had nothing to do with the printing or distribution of the fliers; however, he thereafter circulated an explanatory letter wherein he took "full responsibility" for the flier.

On November 7, 1984, appellants Roland Mastandrea and Maureen Mastandrea filed a complaint, *pro se,* in the Lake County Common Pleas Court alleging defamation against appellees Lorain Journal Company, Paul O'Donnell, Rowley Publications, Geoffrey Haynes, George Tegner, Jr., George Tegner III, Charles Cox and others. (Claims against the other defendants were dismissed by the court on April 14, 1986.)

This court should note that appellees Charles Cox and George Tegner, Jr. and George Tegner III have filed separate appellate briefs concerning the fourth assignment only. On page three of their brief, appellants state that "claims asserted against eleven individuals for libelous republication of the defamatory article written by Paul O'Donnell and published by the Lorain Journal Company on November 8, 1983 and for the torts of intentional and negligent infliction of emotional distress * * * are still pending." However, on April 14, 1986 the court granted summary judgment in favor of Cox and the Tegners. No appeal was taken from this April 14, 1986 judgment, and the instant appeal does not appear to be directed towards Cox or the Tegners. Appellants acknowledged at oral hearing that this appeal was not directed at Cox and the Tegners.

On February 1, 1988, the court granted Rowley Publications' and Geoffrey Haynes' motion for summary judgment, vacated its prior denial of summary judgment on behalf of Lorain Journal and Paul O'Donnell, and granted summary judgment as to them also.

On February 29, 1988, appellants timely filed a notice of appeal and assigned the following as error:

"1. The trial court committed reversible error by granting summary judgment to the Lorain Journal Company and Paul O'Donnell when there were genuine issues of fact in dispute as to whether a reasonable jury, acting reasonably, could find actual malice with convincing clarity in their publication of a defamatory article on November 8, 1983.

"2. The trial court committed reversible error by granting summary judgment to Rowley Publications and Geoffrey Haynes when there were genuine issues of fact in dispute as to whether a reasonable jury, acting reasonably, could find actual malice with convincing clarity in their publication of a defamatory article on May 11, 1984.

"3. The trial court erred in granting summary judgment to Rowley Publications and Geoffrey Haynes when the evidence showed that Appellant was neither a public official nor a public figure and thus the actual malice standard did not apply and when there was a genuine issue of material fact in dispute concerning negligence in publishing the article of May 11, 1984.

"4. The trial court committed reversible error by granting summary judgment to all Appellees on appellant Maureen Mastandrea's claims when they adduced no evidence respecting those claims."

In their first assignment of error, appellants argue that the court should not have granted summary judgment to the Lorain Journal and Paul O'Donnell. This assignment is not well taken.

On election day, November 8, 1983, the Lorain Journal, which is the publisher of the Lake County News–Herald, published an article by one of its reporters, Paul O'Donnell, titled "MASTANDREA admits distributing 'smear' fliers." Appellants argue that the Lorain Journal knew that this was false because Roland Mastandrea never admitted, and in fact denied, *distributing* "smear fliers." However, prior to the article's publication, Mastandrea passed out a letter to the effect that he took "full responsibility" for the fliers. Mastandrea asserts that the Lorain Journal's article contributed to his loss of the campaign, damaged his reputation in the community, and adversely affected his health and family life.

█ Although appellants do not raise it until the third assignment of error, the first issue is whether Mastandrea was a "public official."

At the time of the publication of the article, Mastandrea was a councilman and a mayoral candidate. He was also an individual who had voluntarily injected himself into a particular public controversy and had assumed prominence in the resolution of a public question, *i.e.*, the outcome of the Willough-

by mayoral race. See *Gertz v. Welch* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789.

However, at the time of the publication of the Haynes article, Mastandrea was neither a candidate nor a holder of public office.

Therefore, appellants argue that Mastandrea was no longer a "public official" or "public figure" on May 11, 1984, for purposes of the "actual malice" standard. In *Scott v. News–Herald* (1986), 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699, a controversy arose out of an interscholastic event wherein Scott was acting in an official capacity as a school superintendent. Thereafter, a legal hearing was conducted wherein it was claimed that Scott had perjured himself. Before the legal hearing and the publishing of the allegedly defamatory newspaper column, Scott retired. However, the Ohio Supreme Court commented in a footnote as follows:

"Appellant's retired status at the time of the legal hearing is thus not germane because the averred defamatory remarks were made in the course of actions arising from official conduct that were, most importantly, matters of import to the community's legitimate interest in a public official's performance of public responsibilities. Justice Brennan in his majority opinion in *Rosenblatt* [*v. Baer* (1966), 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597] reiterated the 'strong interest in debate on public issues, and * * * a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. Criticism of government is at the very center of the constitutionally protected area of free discussion.' *Id.* at 85 [86 S.Ct. at 675–676, 15 L.Ed.2d at 605]. It is similarly our view, under Ohio's Constitution, that *the subsequent retirement of an individual does not diminish his or her status* with respect to the discussion and debate of issues related to a prior status or position." (Emphasis added.) *Scott, supra,* at 247, 25 OBR at 305, 496 N.E.2d at 703, fn. 2.

Thus, pursuant to *Scott,* appellant was still a "public figure" or "public official" with respect to the May 11, 1984 article and the "actual malice" standard applied. It is also to be noted that the time lapse between Mastandrea's public official status and the May 11, 1984 article is approximately six months during which time the controversy apparently had not died, as during this time a hearing was initiated before the Ohio Elections Commission.

In *Scott, supra,* the court discussed the burden of proof with respect to the defamation of a plaintiff who is a public official.

This reasoning was later followed in *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 79, 518 N.E.2d 1177, 1179, wherein the court held:

" * * * [T]he concept of actual malice in defamation cases involving public officials is separate and distinct from the traditionally defined common-law standard of malice or actual malice. Actual malice in the context of defamation may not be inferred from evidence of personal spite, ill will, or deliberate intention to injure, as the defendant's motives for publishing are irrelevant. A defamation plaintiff who is required to show actual malice must demonstrate, with convincing clarity, that the defendant published the defamatory statement either with actual knowledge that the statement was false, or with a high degree of awareness of its probable falsity."

Civ.R. 56(C) provides that summary judgment shall be rendered if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In *Varanese*, the court discussed the review of summary judgments in defamation cases as follows:

"In reviewing the instant cause, this court is mindful of its responsibility to conduct an independent examination of the record to ensure against forbidden intrusions into constitutionally protected expression. *Bose Corp. v. Consumers Union of U.S., Inc.* (1984), 466 U.S. 485, 508 [104 S.Ct. 1949, 1963, 80 L.Ed.2d 502, 521], rehearing denied (1984), 467 U.S. 1267 [104 S.Ct. 3561, 82 L.Ed.2d 863]. We are also aware of the fact that the judgment before us is the trial court's granting of appellant's motion for summary judgment. This court has observed that '[s]ummary procedures are especially appropriate in the First Amendment area' due to the potential chilling effect which the threat of a lawsuit may have on the exercise of First Amendment rights. *Dupler [v. Mansfield Journal Co., Inc.], supra,* (1980), [64 Ohio St.2d 116] at 120, 18 O.O.3d [354] at 357, 413 N.E.2d [1187] at 1191. It is for this reason that *the plaintiff's burden of establishing actual malice must be sustained with convincing clarity* even when the plaintiff's case is being tested by a defendant's motion for summary judgment. *Dupler, supra,* at paragraphs one and two of the syllabus; *Bukky [v. Painesville Telegraph & Lake Geauga Printing Co.], supra* [ (1981) 68 Ohio St.2d 45, 22 O.O.3d 183, 428 N.E.2d 405], at syllabus. The United States Supreme Court has recently held that 'a court ruling on a motion for summary judgment must be guided by the New York Times 'clear and convincing' evidentiary standard in determining whether a genuine issue of actual malice exists—that is, whether the evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity.' *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 257 [106 S.Ct. 2505, 2514–2515], 91 L.Ed.2d 202, 217. It should be remembered, however, that *for purposes of ruling on a defendant's summary judgment motion in this context, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'* *Id.* at 255 [106 S.Ct. at 2513], 91 L.Ed.2d at 216.

"With all these principles in mind, we turn now to a consideration of whether appellee sustained her burden of demonstrating actual malice with convincing clarity. Our determination of this question mandates an independent review of the record and, particularly, the evidence adduced by appellee in opposition to appellant's motion for summary judgment." (Emphasis added.) *Varanese, supra,* 35 Ohio St.3d at 80–81, 518 N.E.2d at 1180–1181.

■ As part of appellees' submissions with their motion, the reporter, O'Donnell, stated that he "believed the story to be fair, accurate and truthful at the time it was published, and still believes the article to be entirely fair, accurate and truthful * * *." Per *Varanese,* this court must examine the evidence adduced by appellants in opposition to the Lorain Journal's and O'Donnell's motion for summary judgment.

Appellants attached and incorporated by affidavit ten exhibits to their memorandum in opposition to the motion for summary judgment. The first exhibit is a copy of the article. This exhibit was no doubt offered to show the contents of the article and not to prove actual malice since "no contention is made, and none could be made, that the allegations in the ad are 'so inherently improbable that only a reckless man would have put them in circulation.' *St. Amant [v. Thompson], supra* [ (1968), 390 U.S. 727], at 732 [88 S.Ct. 1323, 1326, 20 L.Ed.2d 262, 268]." *Varanese, supra,* at 81, 518 N.E.2d at 1181.

The second, fourth, fifth, sixth, eighth, and ninth exhibits are copies of articles in the Lake County Telegraph and the News–Herald. None of these "annexes" contribute to this court's inquiry as to the Lorain Journal's or to O'Donnell's state of mind at the time of publication of the article. The third exhibit is a copy of the "Wake Up Willoughby" flier. The seventh exhibit is a copy of the letter/flier titled "From R. Mastandrea" wherein Mastandrea claims to take "full responsibility" for the "Wake Up Willoughby" flier. The tenth exhibit is Mastandrea's affidavit. Attached to this affidavit are various exhibits, none of which is probative of O'Donnell's and the Lorain Journal's state of mind.

One of these exhibits is a copy of a transcript of a meeting between Roland Mastandrea and Paul O'Donnell which Mastandrea recorded unbeknownst to O'Donnell. In their appellate brief, appellants state that this transcript is the best evidence that the Lorain Journal knowingly published a defamatory falsehood. However, a perusal of this transcript does not reveal evidence tending to show that either O'Donnell or the Lorain Journal had *actual knowledge* that the disputed statements in the article were false or that he had a high degree of awareness of their probable falsity. In support of their arguments, appellants specifically cited a portion of the transcript in which O'Donnell allegedly admits that the article was edited and altered by the

Lorain Journal after he turned it in and that Roland Mastandrea should be "pissed" about it. Specifically, his comments were: "I think you ought to be real pissed about it. We always—we being the newspaper—always talk about responsibility and how we have to have responsible [*sic*]. I think we are really bad at policing ourselves." His comments are therefore not probative that the Lorain Journal article was false or that it had a high degree of awareness of its probable falsity at the time of the alteration.

In their motion for summary judgment, appellants also cite to portions of various depositions which they claim to be supportive of their position. In particular, appellants point out the testimony in the depositions of Charles Fox, John Gorman and Mike Somrack to show that they told O'Donnell that Mastandrea did not distribute any fliers. This evidence is not probative of whether O'Donnell believed Mastandrea to be the person responsible for the distribution of the fliers. These statements from Mastandrea supporters that Mastandrea did not personally distribute the fliers may have alerted O'Donnell as to the *possible* problem. However, as was previously discussed, O'Donnell obviously felt that his article as written prior to editing did not malign Mastandrea. Further, these statements do not indicate that the person(s) responsible for the editing realized, with a high degree of awareness, the probable falsity. The statements are not enough, particularly in light of the letter "accepting responsibility" which was authorized by Mastandrea. For liability to attach, a defendant must proceed to publication despite a *high degree of awareness of the probable falsity* of the published statements. *Varanese, supra*, 35 Ohio St.3d at 82, 518 N.E.2d at 1182.

Thus, looking at the record and evidence in support of appellants' position, this court must come to the conclusion that appellants did not sustain their burden of demonstrating "actual malice" with "convincing clarity" in reference to Paul O'Donnell and the Lorain Journal.

In defense of the first assignment, appellees Lorain Journal and O'Donnell have presented various arguments that the article was constitutionally protected speech. However, at this summary judgment stage, the facts alleged by appellants are to be assumed as true, *i.e.*, this court must believe appellants' assertions that Mastandrea did not distribute the fliers. In *Varanese, supra*, the court held:

" * * * It should be remembered, however, that for purposes of ruling on a defendant's summary judgment motion in this context, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.' *Id.* [477 U.S.] at 255 [106 S.Ct. at 2513], 91 L.Ed.2d at 216. * * * " *Varanese, supra*, 35 Ohio St.3d at 81, 518 N.E.2d at 1181.

This issue was also discussed in *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216, as follows:

"Our holding that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes [v. S.H. Kress & Co.,* (1987) ], 398 US [144], at 158–159, 26 L.Ed.2d 142 [at 154–155] 90 S Ct 1598 [at 1608–1609]. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.* 334 US 249, 92 L Ed 1347, 68 S.Ct. 1031 (1948)."

Appellants adduced some evidence in their motions contra to show that Mastandrea did not distribute the fliers. Specifically, the depositions of his supporters indicated that he did not physically participate in the distribution. Mastandrea's deposition and affidavit are to the same effect. For purposes of the summary judgment proceedings, this evidence should be believed. Therefore, assuming that Mastandrea did not participate in distributing the fliers, appellants still have failed to show that the Lorain Journal and O'Donnell published a defamatory statement with actual knowledge of or a high degree of awareness of its probable falsity.

■ In their second assignment of error, appellants argue that the court erred by granting summary judgment to appellees Rowley Publications and Geoffrey Haynes. This assignment is not well taken.

The record shows that shortly after November 1983, Willoughby Mayor Eric Knudson and Councilmen Charles Cox, Richard Piepsny, Richard Wagner and George Gamber initiated a statutory proceeding before the Ohio Elections Commission against Roland Mastandrea stemming from the "Wake Up Willoughby" fliers. They alleged that Mastandrea had violated Ohio's election laws relating to identification of political campaign literature, R.C. 3599.09, and relating to unfair political campaign activities, R.C. 3599.091(B)(10).

On May 10, 1984, the Elections Commission conducted a hearing on the matter. A reporter for Rowley, appellee Geoffrey Haynes, attended and testified at this hearing as a witness and thereafter wrote an article titled "MASTANDREA Guilty in 'Willoughbygate.' " This article was published on May 11, 1984 in the Lake County Telegraph, owned by Rowley. Appellants

contend that the article defamed them by alleging that Mastandrea was "guilty" of "Willoughbygate" as determined by a "court" and was thus subject to criminal sanctions.

As discussed, "actual malice" is "actual knowledge that the statement was false, or with a high degree of awareness of its probable falsity." *Varanese, supra,* at 80, 518 N.E.2d at 1180.

The May 11, 1984 article described the outcome of the proceeding before the Ohio Elections Commission. Appellants argue that the article was defamatory because it alleged that Mastandrea was found "guilty" by a "court" and subjected to penalties whereas the commission had merely determined that there was *probable cause* to believe that Mastandrea had violated Ohio elections law. Appellants also objected to the characterization of the matter as "Willoughbygate." Appellants' evidence in support of their allegations consists of an affidavit by Roland Mastandrea, Haynes' deposition, and an affidavit by the former chairman of the Ohio Elections Commission and the transcripts of the hearing before the Ohio Elections Commission.

There is merit to the contention that the average person reading the May 11, 1984 article and headline could well have been led to believe that Mastandrea had been convicted and penalized for campaign violations. As discussed earlier in this review, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Varanese* and *Anderson, supra.* Nevertheless, assuming *arguendo* that the article was defamatory, appellants still have to demonstrate "actual malice" with "convincing clarity."

This is a difficult burden because it forces a plaintiff to prove what was in a reporter's and publisher's mind. In many, if not most cases, this may be an insurmountable obstacle to recovery; however, as the court stated in *St. Amant v. Thompson* (1968), 390 U.S. 727, 731–732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262, 267:

"[I]t may be said that such a test puts a premium on ignorance, encourages the irresponsible publishers not to inquire, and permits the issue to be determined by the defendant's testimony that he published the statement in good faith and unaware of its probable falsity. Concededly the reckless disregard standard may permit recovery in fewer situations than would a rule that publishers must satisfy the standard of the reasonable man or the prudent publisher. But New York Times and succeeding cases have emphasized that the stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies. Neither lies nor false communications serve the ends of the First Amendment, and no one suggests their desirability

or further proliferation. But to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones. We adhere to this view and to the line which our cases have drawn between false communications which are protected and those which are not.

"The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."

The record shows that appellant's argument is, in essence, the last point of the above quote. Haynes was present at, and testified before, the Election Commission's hearing on the matter. It is undisputed that the legal purpose of the hearing was to determine *probable cause* despite the fact that appellees have submitted an affidavit from a member of the commission attesting that the members of the commission felt that Mastandrea was culpable in the preparation and distribution of the "Wake Up Willoughby" fliers. Further, the chairperson of the commission concluded the hearings with a vote of the commissioners, finding there had been two "violations" of the election law and referring the matter to the county prosecutor for further prosecution.

Appellants assert that, in advance of the commission's proceedings, Mastandrea discussed the import of the proceedings with Haynes and informed him that they were "aimed only at finding probable cause." Furthermore, during the commission's hearing, an attorney for Mastandrea's adversaries stated, " * * * we would ask this commission to find that there is probable cause with respect to Section 3599.09(B)(10). * * * " And staff counsel for the commission stated that " * * * this proceeding could ultimately lead to criminal action. * * * " These statements made during the seven-hour hearing could have put Haynes on notice as to the actual import of the hearing.

Haynes, nevertheless, has testified that he believed the article to be true, that he did not have any knowledge that any of the things contained in the article were false, and that he did not entertain any serious doubts as to the truth or falsity of anything in the article. Haynes states that he learned what "probable cause" meant only after this lawsuit was filed. At best, this

evidence merely shows that Haynes was negligent or *possibly* knew that the information in the article could be false. This is not enough. Appellants must demonstrate with *convincing clarity a high degree of awareness* of its *probable falsity. Varanese, supra.* "Since reckless disregard is not measured by lack of reasonable belief or of ordinary care, even evidence of negligence in failing to investigate the facts is insufficient to establish actual malice." *Scott, supra.* Doubts as to *possible* falsity of an ad are immaterial. *Varanese, supra,* 35 Ohio St.3d at 82, 518 N.E.2d at 1182. Haynes may have been negligent for not investigating the meaning of "probable cause" on the import of the hearing; however, " * * * mere negligence is constitutionally insufficient to show actual malice. * * * " *Id.* at 82, 518 N.E.2d at 1182.

Appellants also make much of the fact that Haynes travelled to the hearing accompanied by Mastandrea's adversaries. However, this evidence would not be probative of Haynes' state of mind as to the falsity or probable falsity of the statements in the article. At most, it may tend to show a bias in favor of Mastandrea's adversaries; however, actual malice " * * * may not be inferred from evidence of personal spite, ill will, or deliberate intention to injure, as the defendant's motives for publishing are irrelevant." *Varanese, supra,* 35 Ohio St.3d at 80, 518 N.E.2d at 1180.

■ Even if there was some evidence which supported appellants' contentions as to the knowledge of falsity or probable falsity of the article, there is another hurdle in regard to news reports of judicial proceedings which appellants must clear in order to avoid summary judgment.

Appellees argue that the holding in *Haynik v. Zimlich* (C.P.1986), 30 Ohio Misc.2d 16, 30 OBR 279, 508 N.E.2d 195, applies in this case. There the court held at paragraphs one and three of the syllabus:

"The 'record' or 'fair report' privilege protects news reports of judicial proceedings, including reports of an arrest and indictment. The privilege applies so long as the news report deals with a matter of public concern and is a fair and substantially accurate account of the judicial proceedings or of information provided by the government."

"A news report is considered a substantially accurate account of official government information or of a government report if the 'gist' or the 'sting' of the allegedly defamatory aspects of the news report taken as a whole accurately reflects the substance of the judicial proceedings or other information obtained from official reports. Errors as to secondary facts, that is, facts which do not change the import of the story or substantially alter the substance of the allegedly defamatory (but protected) aspect of the story, are not actionable."

"The 'record' privilege is abused only if it is shown that defendants published their reports solely for the purpose of causing harm to the plaintiff." *Id.* at 21, 30 OBR at 284, 508 N.E.2d at 200. "So long as the account presents a fair and accurate summary of the proceedings, the law abandons the assumption that the reporter adopts the defamatory remarks as his own." *Id.* at 19, 30 OBR at 283, 508 N.E.2d at 198.

In this case, the article was a report of the proceedings of the Elections Commission's determination of probable cause to prosecute Mastandrea for campaign violations. This was a matter of public concern at least to the citizens of Willoughby. However, it is very arguable that the article was in fact a fair and substantially accurate account of the proceedings. The appellants allege the article implied that Mastandrea was found guilty of "Willoughbygate" by a court. Appellants' claim stems from the single use of the word "court" in the article when Haynes wrote, "The court refused to accept the tape as evidence * * *." In all other instances the commission was correctly labeled. Furthermore, the commission does act in a quasi-judicial mode in a probable cause hearing. As was previously noted, the commission did determine that the finding of "misstatements" by Mastandrea constituted two violations of the elections laws. These secondary facts do not change the import of the story or substantially alter the substance of the story. Finally, the matter was referred for further prosecution, even though it was ultimately "no billed" by the Lake County Grand Jury. Therefore, looking at the article as a whole, it accurately reflects the substance of the proceedings. Therefore, this article is also protected by the "fair report" privilege.

As to the term "Willoughbygate," it is "mere hyperbole or rhetoric, and is an expression of opinion, not fact; and is protected." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 424, 453 N.E.2d 666, 669.

Appellants have failed to establish "actual malice" with "convincing clarity" and their assignment is therefore not well taken.

In their third assignment of error, appellants argue that the court erred in granting summary judgment because the "actual malice" standard did not apply and there was a genuine issue of material fact for the jury. However, these arguments were already addressed in the second assignment and are not well taken.

In their fourth assignment of error, appellants argue that the court erred by granting summary judgment on Maureen Mastandrea's claims. This assignment is not well taken. Maureen Mastandrea has no direct claim against any of the appellees since the articles concerned Roland Mastandrea only. In *Messmore v. Monarch Machine Tool Co.* (1983), 11 Ohio App.3d 67, 11 OBR 117, 463 N.E.2d 108, paragraph two of the syllabus, the court held:

"A cause of action based upon a loss of consortium is a derivative action and as such cannot afford greater relief than that which would be permitted under the primary cause of action. Therefore, an award for loss of consortium cannot exceed that percentage of damages recoverable by the injured spouse. Such an award must be reduced by an amount that is proportionately equal to the percentage of negligence of the injured spouse in accordance with R.C. 2315.19(C)."

Therefore, since Roland Mastandrea's claims must fail, so also must fail Maureen Mastandrea's claims.

The judgment of the lower court is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY and FORD, JJ., concur.