James N. FLEMING, Appellant,

v.

W. Bedford MOORE, III, Appellee,

National Association for the
Advancement of Colored
People, Amicus Curiae.

No. 85–1361.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 7, 1985.

Decided Dec. 26, 1985.

S.W. Tucker (Hill, Tucker & Marsh, Richmond, Va., Gerald G. Poindexter; Poindexter & Poindexter, Surry, Va., on brief), for appellant.

Thomas E. Albro (Bradley B. Cavedo; Smith, Taggart, Gibson & Albro, Charlottesville, Va., on brief), for appellee.

Before WIDENER and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judges.

SPROUSE, Circuit Judge:

James M. Fleming, a black real estate developer in Charlottesville, Virginia, appeals from the judgment of the district court dismissing his Section 1983[1] action against W. Bedford Moore, III, a white professor at the University of Virginia. In his federal complaint Fleming pursued several aspects of a libel action which he had previously lost as a defendant in a Virginia state court. We affirm the district court's ruling dismissing the action since Fleming's sole possible federal remedy is by appeal from the Supreme Court of Virginia to the United States Supreme Court.

The genesis of both the state libel suit, in which Fleming was a defendant, and this action, in which he is the plaintiff, was an advertisement Fleming wrote and published which Moore alleged labeled him a racist. Fleming's disagreement with Moore arose from the former's desire to develop a real estate subdivision adjacent to Moore's home, which was modeled after Thomas Jefferson's Monticello and was situated on approximately 100 acres of land. Beginning in late 1974, Fleming submitted proposals and sought zoning approval to build a planned unit development called Evergreen. Moore opposed the development of Evergreen and spoke out against it at meetings of the planning commission and board of supervisors. Moore spoke of incompatibility of land use, of conservation, and of concerns for the reservoir in the area. The planning commission initially rejected the Evergreen proposal, but later approved a modified plan which provided for a lower population density and a 100 foot buffer strip of trees surrounding the development.

1. 42 U.S.C. § 1983 (1982).

During the zoning controversy, Fleming ran an "advertisement" in the Charlottesville-Albemarle Tribune and the Cavalier Daily (the University of Virginia student newspaper). It read, in part:

**RACISM**

I have endeavored to realize the opportunity to provide housing and pleasant surroundings for working people—the sort of people who made this the great country that it is.

I do not expect any Farmington members to buy my houses. The tenured position-holders who live off the public dole at the expense of the working people are already well-housed, and could not be expected to live in a racially-integrated neighborhood, anyhow.

There is a great deal of irony in the fact that here in Mr. Jefferson's country 200 years after his vision of situating his beloved Monticello upon the hilltop overlooking the developing community we have a replica of Monticello upon the hill overlooking my property which is occupied by a man who wants to deprive working people of the same opportunities that Mr. Jefferson sought for them. Mr. Jefferson even located his slaves' quarters down the hill from his house, but Bedford Moore, the occupant of little Monticello does not want any black people within his sight....

On January 3, 1977, Moore brought libel actions against Fleming in the circuit courts of Albemarle County and the City of Charlottesville. A jury verdict in the Albemarle County case awarded Moore $10,000 in compensatory damages and $100,000 in punitive damages. Fleming appealed to the Virginia supreme court, which reversed the case and remanded it for a new trial. *Fleming v. Moore*, 221 Va. 884, 275 S.E.2d 632 (1981) (*Fleming I*). The Virginia court held that the trial court erred in ruling that Fleming's advertisement was defamatory *per se* and remanded it with instructions on how damages must be proven.

At the second trial, an all white jury found for Moore, awarding him $100,000 in compensatory damages and $250,000 in pu-

nitive damages as well as prejudgment interest of 12% on the punitive damages. The Supreme Court of Virginia granted an appeal on certain issues, and reversed and remanded on the amount of damages awarded. Moore was given the option of remitting "a substantial part" of the award or undertaking a new trial on the issue of damages only. *Gazette, Inc. v. Harris*, 325 S.E.2d 713 (Va.1983) (*Fleming II*). Moore has since agreed to remit one-third of the awards. Execution of the altered judgment has been stayed pending yet another review by the Virginia supreme court.

Fleming sought review of Virginia supreme court rulings by petitioning the United States Supreme Court for a writ of certiorari on September 5, 1984. He asked for a review on the questions of whether the advertisement was a constitutionally protected opinion and whether Moore was a "limited-purpose" public figure. The petition was denied. Fleming filed a second petition for certiorari which was docketed May 2, 1985. In that petition, Fleming repeated his earlier questions and raised others regarding Fleming's state of mind when he published the advertisement and whether the composition of the jury in the second state court trial violated Fleming's due process rights. Once again the Supreme Court denied certiorari.

On August 9, 1984, Fleming filed an amended complaint in the United States District Court for the Western District of Virginia, seeking an injunction against enforcement of the state court award as well as other relief. The district court granted Moore's motion to dismiss the complaint on March 27, 1985. In his dismissal order, Judge Turk wrote that he was "of the opinion that plaintiff's sole remedy in the federal courts is by appeal to the United States Supreme Court." *Fleming v. Moore*, C/A No. 84–0042–C, slip op. at 1 (W.D.Va. March 29, 1985).

There is no question, of course, that in order to sustain an action under 42 U.S.C. § 1983, a plaintiff must show both that he has been deprived of a right secured by the Constitution of the United States and that

the defendant "deprived [him] of this right 'acting under color of any statute'" of a state. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). There is likewise no question that Moore, in bringing his state libel action against Fleming, did not act on behalf of the state or any of its political subdivisions. Fleming contends, however, that

[t]he circumstances alleged here indicate that consideration of race caused the unfairness and partiality which pervaded the entire process of decision. The 1871 Act to enforce the Provisions of the Fourteenth Amendment expressly authorized the lower federal courts to grant equitable relief from judgments of state courts when the decision process is shown to be flawed by racial considerations. The subsequent incorporation of the First Amendment into the Fourteenth emphasizes, in this case, the imperative of liberty and justice for all.

The state action apparently alleged by Fleming is that

the Supreme Court of Virginia failed, and later refused, to consider Fleming's claim of absolute privilege under the First Amendment to publish his opinion as to what his most vocal opponent in an on-going zoning controversy wants and does not want. By its failure 6 March 1981 to recognize that claim and, accordingly, to enter final judgment for the defendant . . . , that court subjected Fleming to the expense, anguish and risk of further litigation and thereby denied to him the equal protection of the laws. And by its 7 June 1984 refusal to consider such claim, that court gave its approval to the deprivation of Fleming's property without due process of law.

We find no merit in Fleming's argument.

Fleming has, on two occasions, attacked the judgment of the Supreme Court of Virginia by petitioning the United States Supreme Court for certiorari. This, of course, was the appropriate procedure. We detect nothing in 42 U.S.C. § 1983 that would permit a federal court to relitigate the libel issues under circumstances present here.

AFFIRMED.