865 F.2d 1257
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James W. FLEMING, Plaintiff-Appellant,
v.
W. Bedford MOORE; E. Gerald Tremblay; Lloyd T. Smith;
John K. Taggart, III; Melvin E. Gibson, Jr.; Thomas E.
Albro; Harry Lee Carrico, Chief Justice of the Supreme
Court of Virginia; George Moffett Cochran, Justice of the
Supreme Court of Virginia; Richard Harding Poff, Justice of
the Supreme Court of Virginia; Asbury Christian Compton,
Justice of the Supreme Court of Virginia; Roscoe Bolar
Stephenson, Jr., Justice of the Supreme Court of Virginia;
Charles Stevens Russell, Justice of the Supreme Court of
Virginia; Alexander Marks Harman, Jr., Senior Justice of
the Supreme Court of Virginia; Thomas Christian Gordon,
Jr., Retired Justice of the Supreme Court of Virginia;
William Carrington Thompson, Retired Justice of the Supreme
Court of Virginia, Defendants-Appellees.
 No. 87-6619.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 7, 1988.
Decided: Jan. 3, 1989.
Rehearing and Rehearing In Banc Denied Jan. 31, 989.
 
 Samuel Wilbert Tucker (Hill, Tucker & Marsh; J. Benjamin Dick, on brief), for appellant.
 Jay T. Swett (Ellen L. Bane, McGuire, Woods, Battle & Boothe, on brief); Guy W. Horsley, Jr., Assistant Attorney General (Thomas E. Albro, Smith, Taggart, Gibson & Albro, on brief), for appellees.
 Before K.K. HALL, MURNAGHAN and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal represents yet another in a long series of attempts by James N. Fleming to overturn a Virginia Supreme Court decision upholding a libel judgment against him. Clearly, neither this Court nor the district court has authority to sit in appellate review of the Supreme Court of Virginia, or any other state court. Accordingly, we affirm the district court's dismissal of Fleming's suit for lack of subject matter jurisdiction.
 
 I.
 
 2
 The dispute giving rise to the case began in 1976 when the appellant, James N. Fleming, published a newspaper advertisement charging W. Bedford Moore III of racism for opposing a proposed low income housing development near Charlottesville, Virginia. Moore sued Fleming for defamation in Albemarle County Circuit Court. Two trials followed. At the first, the jury found in Moore's favor, but the Virginia Supreme Court reversed, holding that the trial court erred in ruling that the advertisement was defamatory per se. Fleming v. Moore, 221 Va. 884, 275 S.E.2d 632 (1981), cert. denied, 469 U.S. 966 (1984). At the second trial, the jury again ruled in Moore's favor and awarded him damages. The Virginia Supreme Court upheld Fleming's liability but reversed the damage award as excessive. Fleming v. Moore, sub. nom. Gazette, Inc. v. Harris, 229 Va. 1, 325 S.E.2d 713 (1985), cert. denied, 472 U.S. 1032 (1985). On remand the state circuit court entered a judgment of $233,333.34 in favor of Moore.
 
 
 3
 In the meantime, the Virginia Supreme Court decided Chaves v. Johnson, 230 Va. 112, 335 S.E.2d 97 (1985), wherein the court stated that "[p]ure expressions of opinion, not amounting to 'fighting words,' cannot form the basis of an action for defamation." Id. at 119, 335 S.E.2d at 101. Fleming believed the rule announced in Chaves forbade entry of a libel judgment against him. The Virginia Supreme Court refused, however, to reconsider the libel judgment against Fleming in light of Chaves. Fleming once again petitioned the United States Supreme Court for a writ of certiorari, which was denied. Fleming v. Moore, 479 U.S. 890 (1986). Fleming then petitioned for a rehearing, but that request was denied. 479 U.S. 1012 (1986). By Fleming's own account,[1] his petition for rehearing asked the United States Supreme Court to require the Virginia court to reconsider the judgment against him in light of Chaves.
 
 
 4
 Unsatisfied with pursuing the proper route for review of state court judgments, (i.e., petition to the United States Supreme Court for a writ of certiorari), Fleming latched onto another strategy: challenging the Virginia decision through lawsuits in federal district court. In 1984, he filed a Sec. 1983 action[2] against Moore, the man he had allegedly libeled, seeking to enjoin him from enforcing the defamation judgment awarded by the Virginia courts. The district court dismissed the suit, and this Court affirmed, reasoning that "Fleming's sole possible federal remedy is by appeal from the Supreme Court of Virginia to the United States Supreme Court." Fleming v. Moore, 780 F.2d 438 (4th Cir.1985) ("Fleming I "), cert. denied, 475 U.S. 1123 (1986).
 
 
 5
 Undaunted, Fleming brought the present action in the federal district court for the Western District of Virginia. He filed suit under 42 U.S.C. Secs. 1981, 1983, 1985(3), 1986 and 1988, alleging that Moore, his attorneys and the justices of the Virginia Supreme Court who ruled against him on various appeals had deprived him of his rights under the Thirteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the First Amendment (as incorporated through the Fourteenth). Fleming claimed that the Virginia Supreme Court decision imposed a badge of slavery on him within the meaning of the Thirteenth Amendment by punishing him as a black person for criticizing a white man. He also claimed that the Chaves decision and the Virginia Supreme Court's refusal to reconsider his case in light of it, represented a violation of equal protection by demonstrating Virginia's willingness to protect whites' freedom to express their opinions, while denying similar protection to blacks.[3]
 
 
 6
 Fleming asked the district court to declare the Virginia Supreme Court judgment null and void, to enjoin permanently the enforcement of the libel judgment and to award $1,000,000 in compensatory and punitive damages against the defendants.
 
 
 7
 The district court rejected all claims for lack of subject matter jurisdiction. This appeal followed.II.
 
 
 8
 Even if we were to assume arguendo, in our opinion, that the Virginia Supreme Court was in error in upholding the libel judgment against Fleming, we would be without jurisdiction to correct the mistake. Neither the district court nor this Court could grant relief to Fleming on any of his claims without deciding that the Virginia Supreme Court wrongly decided the merits of Fleming's state appeal. In effect, Fleming asks us to sit in appellate review of a state's highest court. This we may not do.
 
 
 9
 In a line of cases stretching over the past 65 years, the Supreme Court has emphasized that federal district courts and federal courts of appeals have no authority to review a final judgment of a state court that has acted in its judicial capacity. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415, 416 (1923). Only the United States Supreme Court has that power. Feldman, 460 U.S. at 482; 28 U.S.C. Sec. 1257.
 
 
 10
 Appellant argues, however, that the Rooker-Feldman doctrine does not apply where, as here, the plaintiff alleges violations of fundamental constitutional rights. That assertion is clearly incorrect. The plaintiff in Feldman had alleged a violation of his Fifth Amendment rights and yet the Supreme Court ruled that he could not challenge a District of Columbia Court of Appeals decision in federal district court.[4] 460 U.S. at 468-69 & n. 3, 482.
 
 
 11
 The appellant also asserts that the Rooker-Feldman doctrine is inapplicable where, as here, a plaintiff sues under federal statutes that expressly allow a remedy for deprivation of civil rights. In support of the proposition, appellant cites Mitchum v. Foster, 407 U.S. 225 (1972), in which the Supreme Court held that Sec. 1983 actions fell within the exceptions to the Anti-Injunction Act,[5] and therefore a federal district court was not absolutely precluded under all circumstances from enjoining a pending state court proceeding. Id. at 243. Mitchum provides no support for Fleming's argument. Mitchum in no way authorized use of Sec. 1983 to obtain appellate review of final state court decisions in federal district courts. Numerous circuits, including this one, have refused to allow Sec. 1983 plaintiffs to obtain judicial review of state court judgments in lower federal courts. In Fleming I, this Court stated that "[w]e detect nothing in 42 U.S.C. Sec. 1983 that would permit a federal court to relitigate the libel issues" decided adversely to Fleming by the Virginia Supreme Court. 780 F.2d at 440. See also Worldwide Church of God v. McNair, 805 F.2d 888, 893 n. 4 (9th Cir.1986) ("Cases subsequent to Feldman make it clear that Feldman 's jurisdictional bar applies in the Sec. 1983 context, as elsewhere"); Curry v. Baker, 802 F.2d 1302, 1310 n. 5 (11th Cir.), cert. dismissed, 479 U.S. 1023 (1986); Hale v. Harney, 786 F.2d 688, 691 (5th Cir.1986); Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir.1986).
 
 
 12
 Contrary to Fleming's argument, the Supreme Court's decision in Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519 (1987), provides no support for his position. Although five justices stated in Pennzoil that the Rooker-Feldman doctrine did not preclude Texaco's Sec. 1983 suit in federal court,[6] the facts of that case are clearly distinguishable from the instant one. As Justice Brennan explained:
 
 
 13
 Texaco filed the Sec. 1983 action only to protect its federal constitutional right to a meaningful opportunity for appellate review, not to challenge the merits of the Texas suit. Texaco's federal action seeking a stay of judgment pending appeal is therefore an action " 'separable from and collateral to' " the merits of the state court judgment.
 
 
 14
 481 U.S. at ----, 107 S.Ct. at 1531 (Brennan, J., concurring) (emphasis supplied) (citations omitted). By contrast, the instant appeal seeks to overturn the Virginia Supreme Court's decision on the merits.
 
 
 15
 Fleming's First Amendment arguments obviously present a direct challenge to the Virginia Supreme Court decision. He had ample opportunity to raise his First Amendment challenges before the Virginia Supreme Court and to petition the United States Supreme Court for a writ of certiorari on those constitutional rulings adverse to him.
 
 
 16
 The Thirteenth Amendment and equal protection arguments raised by Fleming present a harder question. As we understand Fleming's position, the alleged violations of the Thirteenth and Fourteenth Amendments did not become apparent until the Virginia Supreme Court rendered its decision in Chaves, which took place after Fleming's first two appeals to the Virginia court. According to that theory, Fleming would have had no reason or opportunity to raise the Thirteenth and Fourteenth Amendment arguments when his appeals were before the Virginia Supreme Court because those constitutional violations did not arise until later, when Chaves was decided. Such an argument lacks merit. By Fleming's own account, he petitioned the Virginia Supreme Court for a rehearing of his case in light of Chaves, and when that court refused, he petitioned the United States Supreme Court for a rehearing following a denial of certiorari. Fleming could have and should have raised his Thirteenth and Fourteenth Amendment arguments in those rehearing petitions. We do not have before us the content of those petitions and thus do not know whether Fleming actually preserved the arguments by raising them. Nonetheless, the Supreme Court has emphasized that a litigant's failure to raise constitutional claims in state court does not provide federal district courts with jurisdiction over those claims if they are "inextricably intertwined" with the state court decision. Feldman, 460 U.S. at 482-84 n. 16.
 
 
 17
 In this case, Fleming's Thirteenth Amendment and equal protection arguments are so "inextricably intertwined" with the Virginia Supreme Court's decision that federal district court consideration of those issues would, in effect, constitute review of a final judgment of a state court. To decide if the Virginia court applied a different standard for Fleming than for white libel defendants the district court would have to second-guess the Virginia Supreme Court's interpretation of existing Virginia precedents and its application of such case law to the facts of the Fleming-Moore dispute. Such second-guessing would constitute impermissible appellate review of a state court decision.
 
 
 18
 Fleming cannot avoid the restrictions of the Rooker-Feldman doctrine by framing his challenge as civil rights actions against the state court justices,[7] the attorneys and the plaintiff in the original libel suit. See, e.g., Hale, 786 F.2d at 691 (federal district court had no jurisdiction to consider plaintiff's Sec. 1983 action against ex-wife, her lawyer, and state judge who rendered divorce and child custody decree because such action was "inextricably intertwined" with the state court decision). The appellant's argument that the defendants violated his constitutional rights is premised on the assumption that the Virginia Supreme Court wrongly decided the merits of Fleming's case, either as a matter of federal or of state law. Such a determination would require the district court to sit in appellate review of the Virginia Supreme Court decision.
 
 
 19
 In conclusion, this case represents an attempt by a litigant to obtain review of a state court judgment in a federal district court by framing it as a claim for violation of constitutional rights. Such an attempt flies in the face of the Rooker-Feldman doctrine and is merely a variation of a similar attempt this Court rejected three years ago in Fleming I, 780 F.2d 438. The district court properly dismissed this case for lack of subject matter jurisdiction.
 
 
 20
 Although we find Fleming's arguments without merit, we decline to award attorneys fees and double costs to the appellees pursuant to our authority under Fed.R.App.P. 38. We cannot say that Fleming's jurisdictional arguments sank to the level of frivolousness.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 This Court does not have before it a copy of Fleming's petition for rehearing
 
 
 [2]
 42 U.S.C. Sec. 1983
 
 
 [3]
 Fleming asserts that the defendant in Chaves was white. However, the Virginia Supreme Court's opinion in Chaves makes no reference to the race of any party
 
 
 [4]
 For purposes of the Rooker-Feldman doctrine, the Court of Appeals of the District of Columbia is equivalent to a state's highest court. 460 U.S. at 464
 
 
 [5]
 28 U.S.C. Sec. 2283
 
 
 [6]
 The Pennzoil Court, however, held that the federal district court should have abstained from hearing Texaco's constitutional claims on the basis of the doctrine enunciated in Younger v. Harris, 401 U.S. 37 (1971). See 481 U.S. at ----, 107 S.Ct. at 1525
 
 
 [7]
 By deciding this case on jurisdictional grounds we do not mean to intimate that judicial immunity is unavailable to protect the justices of the Virginia Supreme Court from this type of lawsuit. It is well established, and has been for many years, that judges acting within their judicial capacities enjoy absolute immunity from monetary damages, unless those jurists act in "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 355-57 (1978); Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1872). Clearly, the justices of the Virginia Supreme Court had jurisdiction to decide the appeal of the libel judgment against Fleming