## KENSINGTON LAND COMPANY

### v.

### ZELNICK.

Court of Common Pleas of Ohio,
General Division, Miami County.

No. 96–456.

Decided Aug. 31, 1998.

46

*Faruki, Gilliam & Ireland, P.L.L., Paul G. Hallinan* and *Charles J. Faruki; Faulkner, Garmhausen, Keister & Shenk, Michael A. Staudt* and *Daniel J. Gentry,* for plaintiff.

*Timothy J. FitzGerald* and *Christopher W. Carrigg,* for defendant.

JEFFREY M. WELBAUM, Judge.

This matter came on for consideration upon the filing of a motion for summary judgment filed by defendant Peter Zelnick on December 24, 1997. Plaintiff, Kensington Land Company, filed its memorandum in opposition on February 13, 1998. The defendant filed his reply on March 6. Then plaintiff filed a motion for leave to file surreply on March 24 with an attached surreply. On April 3, defendant filed a memorandum in opposition to plaintiff's motion for leave to file the surreply. Finally, on April 5, plaintiff filed a reply memorandum in support of its motion for leave to file the surreply. The court granted plaintiff leave to file the surreply on May 6, 1998. The court issued an order granting defendant's motion for summary judgment, in part, on July 13, and an amended order granting defendant's motion for summary judgment on July 17, 1998. On August 24, 1998, the defendant filed a motion for reconsideration and clarification of the July 13 and July 17 orders. That motion is before the court.

This controversy involves the development of two contiguous parcels of land by plaintiff located in the city of Troy. One of the parcels is known as the "Blackmore property." It consists of approximately sixty-seven acres. Forty-five acres of the Blackmore property were zoned R–2 residential shortly after its annexation into the city of Troy about ten years prior to the filing of the complaint. The second parcel, known as the "Mader/Peeples Parcel," is an approximately thirty-nine-acre tract that was acquired by plaintiff in June 1996. Plaintiff purchased the properties to develop them into a single subdivision that would ultimately become known as "the Kensington/Hunington Subdivision," hereinafter referred to as "the development."

The plaintiff's claim is premised upon several different types of activity of the defendant, most of which is not disputed. First, the activity of Zelnick's objections and allegedly false statements to the city of Troy, its subcommittees, and ancillary meetings regarding the rezoning of the Blackmore property and the zoning of the Mader/Peeples parcels as a single planned unit development ("PUD"). The concerns expressed by Zelnick mainly involved the issue of the effect of the development on area groundwater. The PUD was approved by a city ordinance on June 17, 1996. Second, the claims involve Zelnick's allegedly false statements to the media concerning the value of the proposed homes that would constitute the PUD. Third, also involved were Zelnick's allegedly false statements to the media and others associated with a referendum challenging the council's ordinance approving the PUD zoning.

Prior to the referendum election, plaintiff submitted a final plat for separate development of the Blackmore parcel in accordance with the existing R–2 zoning designation, hereinafter referred to as "the final plat." It was approved by the

city, and the defendant filed an administrative appeal and request for injunctive relief with this court, which was dismissed for lack of standing on January 31, 1997, in *Zelnick v. Troy City Council* (1997), 85 Ohio Misc.2d 67, 684 N.E.2d 381. Zelnick did not prove that he would be adversely affected by the action of the council. Also, Zelnick filed a second referendum petition to place the council's administrative action adopting the final plat on the ballot in the next general election.

In regard to the referendum campaign involving council's approval of the PUD, Zelnick was a primary spokesperson for opposition of the development and the zoning ordinance. He made public statements that the development would adversely affect groundwater supplies and schools and told other persons that he was told by a planning official that the value of the homes would be between seventy and eighty thousand dollars to about one hundred and twenty thousand dollars. The officers of the plaintiff corporation served as primary spokespersons in favor of the action of Troy City Council. At a public "Meet the Candidate" night, defendant Zelnick and Mrs. Tomb, an officer of the plaintiff corporation, were the representatives who spoke on this issue.

To the extent that defendant's motion for reconsideration and clarification seeks dismissal of the remaining cause of action for tortious interference, the motion is denied. To the extent that this decision clarifies the previous order, the motion is granted, in part. Specifically, the court finds that the issue of "election misconduct" alleged in the complaint is not an independent cause of action. Rather, it is a component of the cause or claim for tortious interference with actual or prospective economic or business relationships regarding the improper referendum petition that challenged administrative action of the city of Troy. The allegation of election misconduct as to the improper referendum is incorporated into the second claim via the paragraphs incorporating the previous allegations.

The defendant claims in the motion for reconsideration and clarification that he is entitled to dismissal of the complaint because he interprets the court's order granting in part and overruling in part defendant's motion to dismiss, entered September 8, 1997, to mean that the court dismissed the tortious interference claims relating to the subject matter of referenda-related activity. That order granted defendant's motion to dismiss only on the issue of plaintiff's motion to dismiss the abuse of process claim concerning referenda-related activity. The reasoning was expressed that the claim for abuse of process must involve an allegation of abuse of judicial process. It did not dismiss the claim for tortious interference relating to the improperly filed referendum as alleged in the second

claim. If one may infer otherwise from the court's language in the order to dismiss in part, then this clarification is made.

The complaint requested relief for several causes of action contained in the first and second claims for relief. In the first claim for relief, it sought damages for abuse of process of both the referendum (including election misconduct) and judicial processes. On a prior motion filed by the defendant, the court granted a motion to dismiss regarding the claims for abuse of process as to the referendum petitions. (See order granting in part and overruling in part defendant's motion to dismiss, filed September 8, 1997.) The remains of the first claim of plaintiff's complaint which survived the motion to dismiss include a claim for abuse of process of the court. It alleges damages for diminution in value of the PUD through prolonged interest payments, loss of potential sales to other developments which have not been so impeded, attorney fees, and punitive damages. In the second claim for relief, plaintiff's complaint claims tortious interference with actual and prospective business enterprises and relations with the city of Troy, and others, and damages as alleged in the first claim.

Civ.R. 56(C) specifically provides that before summary judgment may be granted, the court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and upon viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party against whom the motion has been made. Accordingly, since there is conflicting evidence on the issue, the court has considered that Zelnick made the alleged false statements maliciously as alleged and acted with malicious intent as alleged.

Summary judgment is to be granted only on the basis of the pleadings, depositions, answers to interrogatories, admissions, affidavits, transcripts of evidence, and written stipulations. In this case, the court has examined all evidentiary materials including but not limited to the depositions filed of record and the affidavits and materials submitted by both defendant and plaintiff. The foregoing materials offer assertions of material fact which if believed would allow a reasonable trier of fact to possibly find in favor of plaintiff on the claim of tortious interference with actual or prospective economic or business relationships contained in the second claim regarding an improperly filed referendum petition.

The burden of establishing that material facts are not in dispute and that no genuine issue of fact exists is on the party moving for summary judgment. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Once a motion for summary judgment has been filed, Civ.R. 56

places a burden on the nonmoving party to set forth specific evidentiary facts showing the existence of a genuine issue for trial. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489; *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. See also, *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 567 N.E.2d 1027; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802.

The court's role at this juncture is not to try issues of fact. The court is allowed only to determine if triable issues of material fact exist. *Viock v. Stowe-Woodward Co.* (1983), 13 Ohio App.3d 7, 13–14, 13 OBR 8, 14–16, 467 N.E.2d 1378, 1384–1386; *McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Mgt.* (1993), 87 Ohio App.3d 613, 619, 622 N.E.2d 1093, 1096–1097. Since the court is not permitted to engage in trial by affidavit or deposition, credibility determinations may not be made by the court on a motion for summary judgment, but are left for the trier of fact at trial. *Mastandrea v. Lorain Journal Co.* (1989), 65 Ohio App.3d 221, 583 N.E.2d 984. Inconsistencies within or between the affidavit and deposition, if any, must be resolved by the trier of fact. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123; *Miller v. Horn* (June 28, 1996), Clark App. Nos. 95–CA–113 and 95–CA–114, unreported, 1996 WL 354756. For purposes of this motion, the court is bound to accept the depositions and affidavits as true. Although there are internal and external inconsistencies in the evidence, the court does not find that the inconsistencies are material to resolution of the issues where partial summary judgment is granted herein.

When giving plaintiff Kensington Land Company the inferences to which it is entitled, there are triable issues of fact concerning plaintiff's second claim for relief relating to a portion of the cause of action alleged for tortious interference with actual or prospective economic or business relationships regarding an improperly filed referendum petition. This includes allegations of election misconduct regarding such improper referendum.

On March 6, 1996, the Ohio Supreme Court clarified the standards for granting summary judgment under Civ.R. 56 when a moving party asserts that a nonmoving party has no evidence to establish an essential element of a nonmoving party's case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. The Supreme Court at 293, 662 N.E.2d at 274:

"Accordingly, we hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civil Rule 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case.

Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party."

Here, the movant-defendant Peter J. Zelnick has met his burden of going forward as to several issues. He has shown that there are no genuine issues of material fact remaining and is entitled to judgment as a matter of law in regard to plaintiff's first claim for relief and all claims set forth in the second claim, except a portion of the claim alleging tortious interference with actual or prospective economic or business relationships of plaintiff. He has specifically delineated the basis upon which summary judgment is sought in order to allow Kensington Land Company a meaningful opportunity to respond. *Mitseff, supra; Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352, 353–354. As a result, respondent Kensington has a reciprocal burden of specificity. A party cannot rest on the assertions contained in the pleadings but must set forth specific facts showing a triable issue of fact by the means listed in Civ.R. 56(C). *Mitseff, supra.*

The parties have raised the question whether defendant Zelnick is entitled to the protection of a qualified privilege regarding the alleged tortious communications. Resolution of this issue establishes the plaintiff's burden of proof. First, the court must determine whether plaintiff is a "public figure" as to this controversy, based on the cases of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, and *Wolston v. Reader's Digest Assn., Inc.* (1979), 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450. If the plaintiff is a public figure, then defendant Zelnick is entitled to a qualified privilege. If defendant Zelnick is entitled to a qualified privilege, then plaintiff must show by clear and convincing evidence that the defendant acted with "actual malice."

"Actual malice" is defined as acting with knowledge that the statements are false, or acting with reckless disregard as to their truth or veracity. *New York Times Co. v. Sullivan, supra; Curtis Publishing Co. v. Butts, supra; Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789, and *Wolston v. Reader's Digest Assn., Inc., supra; Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609, at paragraph two of the syllabus; *Wilson v. Scripps–*

*Howard Broadcasting Co.* (C.A.6, 1981), 642 F.2d 371. Evidence of hatred, spite, vengefulness, or deliberate intention to harm can never, standing alone, warrant a verdict for the plaintiff in such cases. This is because the focus of the inquiry is not on the defendant's attitude toward the plaintiff, but rather on the defendant's attitude toward the truth or falsity of the statement alleged to be actionable. *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 79–80, 518 N.E.2d 1177, 1179–1181. A showing of actual malice requires sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Trades Council,* (1995), 73 Ohio St.3d 1, 9, 651 N.E.2d 1283, 1290–1291. The court finds from the record that there is no dispute of a material fact concerning whether plaintiff is a "public figure" for this purpose.

It has been held in cases with facts similar to these that developers who significantly participate in the process of seeking recommendations and approvals from public agencies for rezoning and development are "public figures" under a First Amendment analysis, even though such plaintiffs did not want any controversy over their applications. *Walters v. Linhof* (D.Colo.1983), 559 F.Supp. 1231; *Okun v. Superior Court of Los Angeles Cty.* (Cal.1981), 29 Cal.3d 442, 175 Cal.Rptr. 157, 629 P.2d 1369, certiorari denied (1981), 454 U.S. 1099, 102 S.Ct. 673, 70 L.Ed.2d 641, appeal after remand (1984), 158 Cal.App.3d 997, 205 Cal.Rptr. 532, certiorari denied (1985), 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 820. The result has been the same concerning applicants for permits or other forms of government action when the business of the applicant required some agency approval. For example, in a situation involving a controversy involving the application for a local cable television license, the court noted that the obtaining of the license was the business of the plaintiffs and they necessarily "thrust themselves" into the competition, causing them to be "public figures" for the issues within the controversy. *Continental Cablevision, Inc. v. Storer Broadcasting Co.* (D.Mass.1986), 653 F.Supp. 451.

Here, there is no question of a material fact under the Civ.R. 56 standard regarding whether plaintiff thrust itself to the forefront of a particular public controversy to affect its resolution causing it to be a public figure for the limited purposes of this controversy. In making this determination, the court has utilized the factors that various courts have considered in determining this issue. Factors that weigh in favor of a finding that plaintiff is a public figure within the limited issues of this case are varied. Whether the plaintiff and defendant established a likelihood of rebuttal through their letter-writing to the editor of a newspaper weighs in favor such a finding. *Wright v. Haas* (Okla.1978), 586 P.2d 1093. In a housing development controversy, the court considered whether the plaintiff discussed the issue with the media or attempted to organize or lead

others to oppose or support the project. The number of times the plaintiff spoke at public hearings concerning the project was a factor the court considered. *Fleming v. Moore* (Va.1981), 221 Va. 884, 275 S.E.2d 632, appeal after remand (Va.1985), 229 Va. 1, 325 S.E.2d 713, certiorari denied (1985), 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 643 and certiorari denied (1985), 473 U.S. 905, 105 S.Ct. 3528, 87 L.Ed.2d 653 (later proceeding) (C.A.4, 1985), 780 F.2d 438, certiorari denied (1986), 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189. Significant activity relating to a referendum regarding the purchase of property of a town was found to be a factor in *Cloyd v. Press, Inc.* (Tenn.App.1981), 629 S.W.2d 24.

■ The court notes that *Walters v. Linhof, supra*, applies a different standard of defense than is provided by Ohio law. In circumstances where the defendant acted in furtherance of some interest of social importance, Colorado law grants defendants an absolute privilege. Ohio provides only a qualified privilege. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Building Trades Council, supra*, 73 Ohio St.3d at 13, 651 N.E.2d at 1293–1294. Nonetheless, *Walters v. Linhof, supra*, is helpful in determining whether the plaintiff here is a public figure for the limited purposes of this controversy.

The facts in *Walters v. Linhof*, center upon activity of a defendant who wrote letters to the editor and spoke out at public hearings and ancillary meetings against a development. The plaintiffs-developers contended that they had been defamed by the communications made by the defendant. The activity of defendant Zelnick during the public hearing phase of events, which occurred prior to the commencement of the referendum procedures and election, is similar to the communications and activity of the defendant in *Walters v. Linhof, supra*. In *Walters v. Linhof*, the plaintiffs admitted that they might have invited public comment by requesting a zoning change to allow the development, but contended that they did not "invite the defendants to abuse them in print," 559 F.Supp. at 1235. The court nonetheless held that the plaintiffs invited public comment by virtue of the application for zoning change and did thereby "thrust themselves to the forefront of a particular controversy to affect its resolution," 559 F.Supp. at 1235. Consequently, it held that plaintiffs were public figures as to the issues of that particular controversy.

Here, representatives of plaintiff actively engaged in advocacy in favor of the zoning change at governmental public hearings and committee meetings required by law and ancillary meetings and discussions, wrote letters to the editor, conducted interviews with newspaper reporters, sent flyers to registered households of registered voters, and openly campaigned against the referendum. The most prominent activity of plaintiff was when Mrs. Tomb, an officer of the plaintiff corporation, spoke as the representative voice advocating against the referendum at a public meet-the-candidates night. Even if these acts were done

to some extent in self-defense, as plaintiff contends, plaintiff was thereby transformed into a "public figure" under the First Amendment analysis for the limited purposes of this controversy when the factors outlined above are applied here.

Defendant Zelnick is therefore entitled to this First Amendment qualified privilege as to any communications concerning the plaintiff that are alleged to be wrongful. This privilege permeates the surviving causes of action set forth in plaintiff's complaint. *Smith v. Ameriflora 1992, Inc.* (1994), 96 Ohio App.3d 179, 187, 644 N.E.2d 1038, 1043–1044. The law in this state imposes the burden of proving lack of privilege or justification on the plaintiff. *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 866–867. Accordingly, at the summary judgment phase of the litigation, the court is limited to examining the evidence " 'taking all permissible inferences and resolving questions of credibility in plaintiff's favor to determine whether a reasonable jury acting reasonably could find actual malice with convincing clarity.' " (Emphasis deleted.) *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 121, 18 O.O.3d 354, 357, 413 N.E.2d 1187, 1192, quoting *Nader v. deToledano* (D.C.App.1979), 408 A.2d 31, 50.

As stated in this court's prior decision on defendant's motion to dismiss filed September 8, 1997,[2] the tort of abuse of process is designed to address abuse of judicial process. An appeal from an administrative decision to a court of general jurisdiction is judicial process, which may support a claim for abuse of process provided that the other elements of the tort are satisfied. *Stolz v. Wong Communications L.P.* (1994), 25 Cal.App.4th 1811, 1823, 31 Cal.Rptr.2d 229, 237; *Tellefsen v. Key Sys. Transit Lines* (App.1961), 198 Cal.App.2d 611, 614–616, 17 Cal.Rptr. 919, 922. In Ohio, as in California, it is necessary to allege and show "a further act in the use of the process not proper in the regular conduct of the proceeding." *Clermont Environmental Reclamation Co. v. Hancock* (1984), 16 Ohio App.3d 9, 11, 16 OBR 9, 11, 474 N.E.2d 357, 361. Recently, In *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.* (1994), 68 Ohio St.3d 294, 626 N.E.2d 115, the Ohio Supreme Court confirmed this requirement when it compared the tort of malicious civil prosecution with abuse of process:

"We accept the proposition that the tort of malicious civil prosecution does not provide a remedy for a situation in which process is used to accomplish an improper ulterior purpose. Such a situation occurs when there is an 'act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process.' " Quoting Prosser & Keeton, The Law of Torts (5

2. See fn. 1, *supra.*

Ed.1984) 898, Section 121. *Yaklevich,* 68 Ohio St.3d at 297–298, 626 N.E.2d at 118.

The *Yaklevich* court reiterated this requirement at 68 Ohio St.3d at 298, 626 N.E.2d at 118, fn. 2. Consequently, it has been held that the mere filing of legal process, even with malicious intent, does not satisfy the tort of abuse of process unless there is shown a further act in the use of the process that is not proper in the regular conduct of the proceeding. *Clermont Environmental Reclamation Co. v. Hancock, supra; Baxter Travenol Laboratories, Inc. v. LeMay* (S.D.Ohio 1982), 536 F.Supp. 247.

Two factually similar cases demonstrating this requirement are *Tellefsen v. Key Sys. Transit Lines, supra,* and *Pimentel v. Houk* (Cal.App.1951), 101 Cal.App.2d 884, 226 P.2d 739. In these cases, the plaintiffs claimed abuse of process. In *Tellefsen,* the allegation centered upon the defendant's malicious and frivolous appeal. The court held that the taking of a frivolous appeal is insufficient to constitute abuse of process in the absence of some act in addition to the issuance of process, where the party is entitled to such process. 198 Cal.App.2d at 613–614, 17 Cal.Rptr. at 921. The court cited *Pimentel v. Houk, supra,* where the defendant maliciously caused a writ of attachment to be issued against the plaintiff's property in order to economically destroy the plaintiff. The court noted, "Had Plaintiff attached without malice, the effect would have been the same." 198 Cal.App.2d at 614, 17 Cal.Rptr. at 921.

■ Here, the plaintiff has demonstrated evidence of defendant's ulterior motive or purpose that defendant intended to cause plaintiff economic harm by his actions. However, plaintiff has failed to allege or demonstrate "a further act in the use of the process not proper in the regular conduct of the proceeding," or otherwise stated "an act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." *Clermont Environmental Reclamation Co. v. Hancock, supra; Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A, supra.*

■ The demonstration of motive alone is insufficient. As the court noted in *Tellefsen v. Key Sys. Transit Lines, supra,* 198 Cal.App.2d at 616, 17 Cal.Rptr. at 922:

"On the face of the complaint only the first test is met, namely, an ulterior purpose. However, 'The ulterior motive or purpose may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive.' (Prosser [2 Ed.1955], supra, p. 669.) As to the second test, the complaint merely alleges what corresponds to the issuance of process in a proceeding, such as the issuance of a writ of attachment. Here, the only act

alleged is the taking of the appeal—no 'wilful act in the *use* of the process' (the appeal) is alleged. (Prosser, supra, p. 668; emphasis added.)"

The explanation in Prosser, *supra*, was relied upon by the court, 198 Cal. App.2d at 615–616, 17 Cal.Rptr. at 922. It provides:

"The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort."

The complaint does not allege nor do the facts here demonstrate that Zelnick engaged in this type of activity which related to the filing of the appeal. The plaintiff was placed on notice that this element was lacking. In response, in its memorandum filed February 13, 1998, beginning at page 37, it advocates that two acts fulfill this requirement. First, that the administrative appeal was initiated by a petition that falsely asserted that the defendant was a citizen of the city of Troy. Second, plaintiff submits that defendant Zelnick, an appellant in the administrative appeal, submitted a false affidavit asserting that Acting Engineer Steve Leffel made certain statements. This evidence does not suffice to fulfill the element because these acts do not constitute a further, wrongful use of the process; rather, they constitute the process. Consequently, the court finds as a matter of law that plaintiff made no showing that it had any evidence to create a genuine issue of material fact on this issue. Therefore, the claim for abuse of process regarding the administrative appeal is found not to be viable.

Defendant Zelnick contends that plaintiff's claim for tortious interference with business relationships contained in the second claim for relief should be dismissed as a matter of law. The court agrees, in part. Summary judgment is warranted as to (1) any damages resulting from the plaintiff's relationship with the city of Troy, (2) any damages resulting from the delay caused by the November 5, 1998 election-referendum petition, and (3) the tortious interference claim premised on abuse of judicial process via the incorporation clause within the second claim for relief.

The first reason that this tortious interference claim is not viable as alleged is that the plaintiff must demonstrate that the relationship between the plaintiff and a third party is economic, not regulatory. However, the evidence presented clearly indicates that this tort was alleged to be established solely because defendant allegedly interfered with plaintiff's regulatory relationship with the city of Troy.

For example, in *Asia Invest. Co. v. Borowski* (1982), 133 Cal.App.3d 832, 840–841, 184 Cal.Rptr. 317, 323, the court was presented with this issue. In that case, the developer was required to obtain permits from the city to develop its property. The plaintiff alleged that defendant's activity objecting to issuance of the permits violated the elements of this tort. The court decided in favor of the defendant on this point.

The court held that the plaintiff developer and the city were not in an economic relationship. The court explained that since the development had not been approved, there were no existing relationships with third parties regarding the project with which the defendant could have tortiously interfered. A similar result was found in the Second District Court of Appeals case of *Singer v. Fairborn* (1991), 73 Ohio App.3d 809, 820, 598 N.E.2d 806, 813–814. The *Asia Investment* court further observed that no privileged statement or conduct can constitute tortious interference with a business relationship, since an element of the tort is conduct that is not protected by a privilege.

The same is true here. There can be no interference with the relationship between the plaintiff and the builders or future home owners regarding the subdivision because any relationship regarding this project was by law subject to a valid referendum process. Until the voters rejected the referendum and upheld the validity of the zoning ordinance, there would be no recognizable economic relationship between the plaintiff and any third party with which the defendant could have interfered.

Second, the defendant is entitled to file a procedurally proper referendum petition that challenges legislative action under R.C. 731.29 for any reason. The filing of a procedurally proper referendum petition is privileged conduct. A procedurally proper referendum petition does not assert any false fact. It challenges legislative action. It is electoral process. The law recognizes that persons will necessarily be uncompensated for damages when they have been damaged by privileged conduct. *Stiles v. Chrysler Motors Corp.* (1993), 89 Ohio App.3d 256, 624 N.E.2d 238. *Wrenn v. Ohio Dept. of Mental Health & Mental Retardation* (1984), 16 Ohio App.3d 160, 16 OBR 169, 474 N.E.2d 1201, *Hecht v. Levin* (1993), 66 Ohio St.3d 458, 613 N.E.2d 585, *Surace v. Wuliger* (1986), 25 Ohio St.3d 229, 25 OBR 288, 495 N.E.2d 939, *Walters v. Linhof, supra.*

The zoning ordinance is legislative action which is by law subject to the referendum in the absence of an emergency measure or ordinance under R.C. 731.30. A referendum petition consists of signatures of citizens who therein express their desire to have the validity of the ordinance decided by the electorate. The filing of a procedurally proper referendum petition does not require any more good cause or justification than one's motivation or reasons for running for public office.

There is no question that Zelnick was entitled to file the referendum petition in the circumstances presented in this case. Since there is no question that the referendum petition was procedurally correct, it is not relevant what the defendant's motivations were in filing it. Therefore, plaintiff may not receive damages for any delay caused by an election occasioned by a procedurally proper referendum petition involving legislative action.

■ Another reason plaintiff may not recover damages for the delay caused by this referendum-election process is that plaintiff, by its application for a zoning change ordinance, constructively consented to the time it took to conduct the election via the referendum as a part of the political process set forth by the law involved in obtaining a zoning amendment. See *Walters v. Linhof, supra.*

■ Finally, by the incorporation clause of the second claim, a component of the tortious interference claim is the abuse of process of the administrative appeal to this court. In addition to the failure of plaintiff to make an adequate showing to create a material issue regarding abuse of process, this allegation also cannot survive because it has been held that the only recognized causes of action for the wrongful filing of a lawsuit are abuse of process and malicious prosecution. In *Havoco of Am., Ltd. v. Hollobow* (C.A.7, 1983), 702 F.2d 643, the court held that the cause of action for tortious interference with existing or prospective business opportunities may not be based on the alleged wrongful filing of a lawsuit, or, as in this case, the administrative appeal.

■ A portion of the second claim for relief survives this challenge because there is sufficient evidence for a trier of fact to consider whether the defendant's filing the referendum concerning administrative action involving the Blackmore parcel constitute tortious interference with actual and prospective business relationships. Since that parcel had previously been zoned to allow the development, the alleged prospective economic relationships such as builders and home owners were not contingent on the filing of a referendum as they were in the November 5, 1996 election-referendum petition. Since defendant Zelnick is not entitled to file a referendum petition in such circumstances, it is not privileged conduct. Therefore, plaintiff may be entitled to compensation proximately caused from the conduct if found by the trier of fact to be wrongful.

The court concludes that based upon the undisputed material facts, there are no genuine issues as to any material fact as to plaintiff's first claim for relief and there are no triable issues regarding plaintiff's second claim except those relating to a portion of plaintiff's cause of action for tortious interference with actual or prospective economic or business relationships. The court therefore concludes that reasonable minds can come to but one conclusion when viewing the evidence

most strongly in favor of plaintiff and that conclusion is that defendant Peter Zelnick is entitled to partial judgment as a matter of law as set forth herein.

IT IS THEREFORE ORDERED that the motion for partial summary judgment of defendant Peter J. Zelnick be and it hereby is granted in part and overruled in part. Defendant Zelnick is granted partial summary judgment as follows: (1) plaintiff Kensington Land Company is a "public figure" under a First Amendment analysis for the limited purposes of this controversy; (2) judgment is entered in favor of defendant Peter J. Zelnick on the issue of plaintiff's claim for damages resulting from abuse of process regarding the administrative appeal captioned *Zelnick v. Troy City Council, supra;* and (3) judgment is entered in favor of defendant Peter J. Zelnick on the claims of tortious interference of actual or prospective economic or business relationships contained in the second claim for relief regarding (A) the issue of plaintiff's claim for tortious interference with existing or prospective business relationships set forth in the second claim for relief as it relates to plaintiff's relationship with the city of Troy, (B) any damages caused by the delay resulting from the November 5, 1996 election-referendum petition, and (C) the portion of the tortious interference claim premised on abuse of judicial process alleged in the first claim for relief as alleged by the incorporation clause of the second claim for relief.

Plaintiff's claims for tortious interference with actual or prospective business or economic relationships resulting from the improper referendum petition filed regarding administrative action of the city of Troy and resulting damages alleged regarding third parties except the city of Troy shall be determined at trial.

IT IS SO ORDERED.

*Judgment accordingly.*